A97A2035. HARDY et al. v. TANNER MEDICAL CENTER, INC. et al.

(499 SE2d 121)

POPE, Presiding Judge.

On the morning of September 4, 1987, 13-month-old Kristy Hardy awoke congested and feverish. Kristy's parents, who are the plaintiffs in this case, took her to Parkway Regional Hospital, where Kristy's temperature was recorded at 102 degrees. Plaintiffs were instructed to take Kristy home to rest, but instead, they went to her grandmother's house and ran errands with Kristy. When plaintiffs and Kristy finally arrived home at approximately 6:30 p.m., Kristy quit breathing. After her mother resuscitated Kristy, an ambulance took her to defendant Tanner Medical Center, Inc.

At Tanner, Kristy originally was seen by an emergency room physician. Thereafter, she was examined by defendant Dr. Eric Baret. Baret admitted Kristy for the night. When Kristy began having trouble breathing again, she was transferred to the intensive care unit, where she died early the next morning.

Pursuant to Kristy's death, plaintiffs filed a medical malpractice action against Tanner and Baret. During a jury trial, Tanner twice moved for a directed verdict as to its liability. The trial court reserved ruling on Tanner's motions. Thereafter, the jury returned a defense verdict.[1] Subsequently, the trial court entered judgment on the jury's

---

[1] During deliberations, the jury became deadlocked eleven to one. Thereafter, all

verdict in favor of Tanner and Baret. It also granted Tanner's motions for a directed verdict. Following the denial of their motion for a new trial, plaintiffs appeal. We affirm.

1. During trial, plaintiffs' expert witness, Dr. Weber, was allowed to show the jury a photocopied textbook picture of an x-ray of a person with an endotracheal tube placed in the person's airway in order to permit Weber to demonstrate to the jury how an x-ray of a properly placed tube should look. Plaintiffs contend that the trial court committed reversible error in failing to further allow plaintiffs to place the photocopy in evidence for the jury's review because it was relevant to their contention that Baret had improperly placed an endotracheal tube in Kristy's airway. We cannot agree. The trial transcript reflects that the photocopy was merely illustrative, and there is no evidence that it depicted the only proper placement of an endotracheal tube. Additionally, the photocopy was cumulative of Dr. Weber's expert testimony in the case. Under such circumstances, there was no abuse of discretion in the trial court's refusal to allow the photocopy to be placed into evidence. *Wood v. Browning-Ferris Indus.,* 206 Ga. App. 707, 708 (3) (426 SE2d 186) (1992).

2. The record in this case demonstrates that the trial court did not qualify prospective jurors with regard to whether they had any employee relationship with Tanner. Plaintiffs contend that because they had requested such qualification prior to jury voir dire in their proposed pre-trial order and orally, they are entitled to a new trial. There is no support for this contention. A review of plaintiffs' proposed pre-trial order, which never actually was entered, demonstrates no request on plaintiffs' part to have prospective jurors qualified regarding any employee relationship with Tanner. The transcript in this case likewise contains no such request. And plaintiffs' attempt to supplement the record with affidavits from their attorneys stating that an oral request for the above qualification was made prior to jury voir dire does not comply with the dictates of OCGA § 5-6-41 (f), and thus creates no record evidence for purposes of this appeal.

In the absence of record evidence of a request to have prospective jurors qualified as to any employment relationship they might have with Tanner, we conclude that the trial court did not err in failing to blanketly qualify prospective jurors on that matter. See *Seaboard Coast Line R. Co. v. Smith,* 131 Ga. App. 288, 291 (1) (b) (205 SE2d 888) (1974). Instead, we further conclude that it was left to the parties to inquire into the matter, and upon finding that a prospective

---

parties agreed to dismiss the one juror who did not agree with the other eleven jurors and have the case decided by the eleven remaining jurors.

juror had such a relationship, move the court to remove the potential juror for cause, if that was desired. See *Daniel v. Bi-Lo, Inc.*, 178 Ga. App. 849, 850-852 (1) (344 SE2d 707) (1986).

3. Plaintiffs' contention that they are entitled to a new trial based on the make-up of the jury venire, which they claim was heavily weighted with former and current employees of Tanner, is meritless. The record fails to demonstrate that plaintiffs ever objected below to the jury list or the venire, nor did they challenge the array. Under such circumstances, plaintiffs have waived the right to do so now. *Scott v. State*, 243 Ga. 233, 234 (2) (253 SE2d 698) (1979).

4. We reject plaintiffs' contention that the trial court committed reversible error in failing to grant their request to strike juror Vicky Scudder for cause. During voir dire, Scudder testified that she had worked for Tanner approximately 19 years earlier, not that she was a present employee of Tanner. Therefore, the trial court was not required by our holding in *Daniel* to strike her for cause. See 178 Ga. App. at 850-852 (1). While it is true that Scudder initially stated that she might not be able to be totally impartial in deciding the case, upon further inquiry, she indicated that she could listen to the evidence in the case and that she would be very fair in doing so. She also indicated that she had no leanings in favor of one party or the other and that she would do her best to make a decision based on the evidence presented at trial. Additionally, she stated that she did not believe she would be persuaded one way or the other by the fact she had once worked for Tanner so many years ago.

"A juror is not disqualified if he [or she] can lay aside whatever opinions or impressions he [or she] may have had and decide the case based upon the evidence presented in court." *Spivey v. State*, 253 Ga. 187, 196 (6) (d) (319 SE2d 420) (1984). Furthermore, the trial court is in the best position to determine a prospective juror's credibility regarding such matters, and its decision regarding whether to retain or dismiss a juror is given great deference. *Cohen v. Baxter*, 267 Ga. 422, 423 (1) (479 SE2d 746) (1997). We will reverse a trial court's decision in matters of this type only upon a showing of manifest abuse of discretion. *Hill v. Hosp. Auth. of Clarke County*, 137 Ga. App. 633, 636 (1) (b) (224 SE2d 739) (1976). Based on all of Scudder's responses to voir dire in this case, we find no manifest abuse of discretion in the trial court's refusal to strike her for cause.

5. We also find no manifest abuse of discretion in the trial court's refusal to strike juror Glenda Williamson for cause. Contrary to plaintiffs' contention, there is no more than mere speculation that Williamson was an employee of Tanner. And while she stated that she knew a pathologist that might testify, and upon initial inquiry, indicated that she might have a tendency to believe what he said, she later agreed that she could listen to all the witnesses and render a

truthful verdict in the case. Under such circumstances, her dismissal for cause was not required. See *Foster v. State*, 248 Ga. 409, 410-411 (3) (283 SE2d 873) (1981); *Taylor v. State*, 243 Ga. 222, 224 (2) (253 SE2d 191) (1979); *Seaboard Coast Line R. Co.*, 131 Ga. App. at 291 (1) (b).

6. Plaintiffs contend that the trial court committed reversible error by giving the jury multiple charges on sympathy and plaintiffs' burden of proof. We disagree. It is undisputed that the charges at issue were accurate statements of the law. They also made sense in the context of the sentences before and after them, and the sympathy charges were made applicable to all the parties. Although there was some repetition, this repetition, when viewed in the context of the entire jury charge, appears to us unlikely to have prejudiced plaintiffs. Absent prejudice, no reversible error exists. *Smith v. Godfrey*, 155 Ga. App. 113, 115 (5) (270 SE2d 322) (1980).

7. Pursuant to Baret's request, the trial court instructed the jury "that a mere difference in view between physicians as to techniques to be employed by them . . . is insufficient in and of itself to support an award of damages. . . ." Plaintiffs contend that by giving this instruction, the trial court committed reversible error because the charge was not adjusted to the evidence. Their contention, however, is meritless. "The expert witnesses [in the case at bar] clearly differed with respect to their diagnosis of [Kristy's] illness and the cause of death, with the result that they also differed in their assessment of the treatment which she should have received." *Crumbley v. Wyant*, 188 Ga. App. 227, 229 (3) (372 SE2d 497) (1988). Thus, the charge was appropriate.

8. There is no merit to plaintiffs' contention that the trial court committed reversible error in charging the jury upon Tanner's request that "[w]here a witness, including a physician or nurse, has no distinct and independent recollection of the care and treatment rendered to a particular patient, they [may] testify from their own knowledge as to the usual custom or course of practice in such situations, and that the treatment rendered in a given situation was in accordance [with] that custom." The charge asserted a correct principle of law. *Thomas v. Newnan Hosp.*, 185 Ga. App. 764, 768 (2) (365 SE2d 859) (1988). It also was warranted in this case based on plaintiffs' attack of several witnesses' lack of independent memory surrounding the treatment of Kristy. Clearly, the charge applied to all witnesses in the case, and not just the nurses that testified. And even if it could be interpreted as applying only to the nurses, plaintiffs have failed to demonstrate any prejudice arising from such a limited interpretation. Thus, the charge does not constitute harmful error.

9. Contrary to plaintiffs' assertion, the record demonstrates that the trial court did not give Tanner's Request to Charge No. 20. As

such, plaintiffs' contention that the giving of that charge constituted reversible error is without merit.

10. In light of the fact that we find that none of plaintiffs' enumerations demonstrates reversible error in this case, which would have warranted a new trial, and the fact that the transcript and exhibits demonstrate at least some evidence to support the jury's verdict, the judgment entered by the trial court in Baret's and Tanner's favor on that verdict must be affirmed. *Randall & Neder Lumber Co. v. Randall*, 202 Ga. App. 497, 498 (414 SE2d 718) (1992). Consequently, we need not address any error alleged by plaintiffs based on the trial court's determination that Tanner was also entitled to a directed verdict in the case. That determination is rendered moot by the proper entry of a judgment on the jury's verdict.

*Judgment affirmed. Johnson, J., concurs. Blackburn, J., concurs and concurs specially.*

BLACKBURN, Judge, concurring specially.

While I agree fully with the analysis and result of the majority opinion, I take this opportunity to point out my concern over the fact that the doctrine of res ipsa loquitur is not applicable to medical malpractice actions in Georgia.

In *Shea v. Phillips*, 213 Ga. 269, 271 (2) (98 SE2d 552) (1957), our Supreme Court stated: "In an action brought by a patient against his physician or surgeon for malpractice, the presumption is that the medical or surgical services were performed in an ordinarily [skillful] manner, and the burden is on the one receiving the services to show a want of due care, skill, and diligence. And in such a case, the proof ordinarily required to overcome such a presumption of care, skill, and diligence is that given by physicians or surgeons as expert witnesses." The doctrine of res ipsa loquitur is as appropriate in medical malpractice cases as it is in any other tort action where the required factors are involved. Georgia courts, however, have determined that "[r]es ipsa loquitur is not applicable in medical malpractice cases in Georgia." *Kapsch v. Stowers*, 209 Ga. App. 767 (1) (434 SE2d 539) (1993). This simply goes too far.

While Georgia has chosen to limit the application of res ipsa loquitur, "[i]n recent years the scope of the . . . doctrine in malpractice actions has been measurably enlarged [in other states]. The courts have not only found sufficient facts to fulfill the special requirements of the doctrine, but also have manifested an acute awareness of the need to protect an injured patient by requiring the physician to explain the reason for the injury or suffer the penalty of an adverse inference in the absence of an explanation." 61 AmJur2d 492, Physicians, Surgeons, Etc., § 333. As Dean Prosser has pointed out, "where the particular defendant is in a position of some special

responsibility toward the plaintiff or the public [res ipsa loquitur] is designed to protect the dependent party from unexplained injury at the hands of one in whom he has reposed trust. In an integrated society where individuals become inevitably dependent upon others for the exercise of due care, where these relationships are closely interwoven with our daily living, the requirement for explanation is not too great a burden to impose upon those who wield the instruments of injury and whose due care is vital to life itself." (Punctuation omitted.) *Klein v. Arnold*, 203 NYS2d 797, 800 (2) (citing Prosser, Res Ipsa Loquitur in California, 37 Cal. L. Rev. 183, 224) (1949). I agree with this learned analysis, and, accordingly, I believe that Georgia has improperly immunized medical professionals from assuming the burden of explaining their actions in appropriate cases where res ipsa loquitur would normally apply. The cost of this gratuitous benefit to the medical profession is being paid by the victims of medical malpractice, who are uniquely penalized, unlike any other category of victims of tortious conduct.

I would hope that the legislature will correct this inequity, and treat victims of medical malpractice the same as other tort victims.

DECIDED MARCH 17, 1998.

*Greer, Klosik & Daugherty, Frank J. Klosik, Jr., John F. Daugherty, Robert J. McCune*, for appellants.

*Tisinger, Tisinger, Vance & Greer, David H. Tisinger, Webb, Carlock, Copeland, Semler & Stair, Wade K. Copeland, Patricia M. Anagnostakis, Cameron P. Turner, Long, Weinberg, Ansley & Wheeler, Sidney F. Wheeler, Ashley A. Parker*, for appellees.