S08A1389, S08X1390. KERSEY et al. v. WILLIAMSON;
and vice versa.

(670 SE2d 405)

HINES, Justice.

This is an appeal by caveators from an order of the Probate Court of Chatham County denying their motion for a new trial following judgment entered upon a jury verdict upholding the validity of the challenged last will and testament of Andrew Roderick Dean ("Dean"). The propounder of the will files a cross-appeal, its issues relevant only if caveators prevail. The caveators challenge many of the probate court's instructions to the jury, as well as the probate court's failure to give several of their requests to charge. Finding such challenges to be without merit, we affirm in the main appeal and dismiss the cross-appeal as moot.

Dean executed the will in question on April 28, 2006, leaving the entirety of his estate to A. Kenneth Williamson ("Williamson"), who was referred to in the will as Dean's "life-long friend," and who was also named as executor of the estate.[1] Dean and Williamson had known each other for approximately 30 years. In a prior will, executed on February 2, 1984, Dean had devised and bequeathed all of his property to his younger brother, Henry Gary Dean. However, Dean's brother died unexpectedly on April 21, 2006 at the age of 51. At the time of Dean's death on May 12, 2006, he was 56 years old and

---

[1] On the same day and just prior to execution of the will, Dean placed all of his "real, tangible and intangible personal property" into the "Andrew Roderick Dean Revocable Trust." Dean himself was the beneficiary under the trust; but, upon his death, the trust was to become irrevocable with the corpus of the trust to "be distributed outright and free of trust to my close, life-long friend, A. Kenneth Williamson." The will contained a specific bequest and devise of the trust property to Williamson. Also, the will provided that should Williamson not survive Dean, the rest, residue, and remainder of Dean's property was to go to Williamson's daughters.

was survived only by collateral relatives ("caveators"). Dean was admitted into the hospital on April 11, 2006 with an assessment on admission that he was suffering from, inter alia, hepatic encephalopathy and alcoholic cirrhosis. On April 22, 2006, after the death of his brother, Dean met with an attorney to discuss drafting a new will. At this meeting, Dean talked about his intentions and his family background; the attorney was "convinced" that Dean "possessed the requisite testamentary capacity." Dean told the attorney that Williamson was his best friend, and had saved his life by getting him to the hospital after Williamson found Dean "passed out" on the floor of Dean's house. Nevertheless, because Dean told the attorney that his relatives would contest the new will, the attorney requested a psychiatric evaluation of Dean to confirm that Dean possessed the requisite capacity to make the will. A psychologist examined Dean and concluded that he "had no issues of impairment" or any "deficiency" that would prevent him from making a will. Dean executed the new will in the presence of the attorney and three other witnesses. After Dean's death, Williamson filed a petition to probate the will in common form. Caveators filed a petition to compel probate of the will in solemn form in order that a caveat might be filed. The parties jointly stipulated to probate the will in solemn form, and accordingly, Williamson filed a petition to do so. Caveators alleged Dean's lack of testamentary capacity and undue influence by Williamson. The case was tried before a jury. Caveators retained a forensic psychiatrist to testify on their behalf. The jury returned a verdict upholding Dean's 2006 will as valid.

## Case No. S08A1389

1. Caveators complain that the probate court's instruction to the jury contained multiple and repetitive charges having inflammatory language[2] on the issues of testamentary capacity and undue influence, and consequently, that the instruction, as a whole, unduly emphasized what the caveators had to prove, amounting to an expression of opinion by the probate court in favor of Williamson. But, the complaint is without merit.

First, the cited language is not, in and of itself, inflammatory, so as to be prejudicial to caveators; but rather, is merely part and parcel of the verbiage used to explain the principles of law applicable in this case. Nor did the reiteration of charges exhibit the court's opinion of the case. The probate court had the duty to charge the jury on the law applicable to issues which were supported by the evidence. *Jones*

---

[2] Caveators cite as objectionable such words and phrases as "force," "coercion," "paranoid," "eccentric," "absurd," "senility," and "destroy free agency."

*v. Sperau,* 275 Ga. 213 (2) (563 SE2d 863) (2002). Moreover, caveators do not claim that such language in the charges resulted in incorrect statements of law. The gravamen of the complaint is that the charges were in excess and repetitive. But, the issues of testamentary capacity and undue influence were central to the challenge to the will, and some repetition on these key concepts, when viewed in the context of the entire jury instruction, appears unlikely to have prejudiced the caveators; absent prejudice, no reversible error exists. *Hardy v. Tanner Medical Center,* 231 Ga. App. 254, 257 (6) (499 SE2d 121) (1998). Furthermore, contrary to caveators' contention, the court's instruction to the jury did not increase their burden; the court appropriately charged the jury that the burden of proof did not shift to the caveators to affirmatively prove that the necessary elements of the prima facie case do not exist, but that caveators were required only to "come forward with evidence to rebut the [p]ropounder's prima facie case." See *Holland v. Holland,* 277 Ga. 792 (1) (596 SE2d 123) (2004).

2. Caveators contend that in charging the jury that "[a] stringent standard must be met in order to set aside the Will, because to do so is to deprive a person of the valuable right to dispose of his property as he wishes," the probate court improperly imposed a higher burden of proof on them. However, that is not the case. The "stringent standard" language did not heighten the burden of proof, but merely reminded the jury that a certain standard of proof had to be met in order to invalidate a will. The probate court clearly charged the jury on the respective evidentiary burdens of the parties. The "stringent standard" charge was a correct statement of the law. *Pope v. McWilliams,* 280 Ga. 741, 745 (2) (632 SE2d 640) (2006). And, contrary to caveators' assertion, such concept is not restricted merely to assessing motions to determine whether there remains an issue to be resolved by the jury. See *Holland v. Holland,* supra at 792 (1).

3. Without citing any legal authority, caveators take issue with the probate court's charge that "[e]ven evidence of a weak and vacillating mind is insufficient to raise a jury issue with respect to a testator's capacity," arguing that there was no need to instruct the jury as to whether the evidence raised a question for its resolution because the existence of a jury question was decided by the denial of Williamson's motion for a directed verdict. But, such charge, which has support in the caselaw, see *Wilson v. Lane,* 279 Ga. 492, 494, n. 7 (614 SE2d 88) (2005); *Anderson v. Anderson,* 210 Ga. 464, 467-473 (80 SE2d 807) (1954), did not direct the jury about its role with regard to determination of the issue of testamentary capacity, but rather correctly informed it that, even when the testator possesses some less-than-optimal mental characteristics, this is not enough to

invalidate a will on the basis of lack of testamentary capacity. Moreover, caveators do not allege, much less demonstrate, how the giving of this charge resulted in harm. In order to constitute reversible error, both error and harm must be shown. *Jackson v. Jackson*, 282 Ga. 459, 461 (4) (651 SE2d 92) (2007).

4. Caveators next challenge the probate court's charge that "[a] person may be unable to transact business or even lack the mental capacity to contract, but may still have sufficient capacity to make a Will. A lunatic, during a lucid interval, may make a Will." They argue that the charge was confusing because it was incomplete as it did not provide the jury with a definition of contractual capacity, and that the use of the term "lunatic" was archaic, and therefore, misleading.

First, while caveators orally requested a further charge on contractual capacity, they failed to submit a written request to charge a definition of capacity to contract until after the probate court had concluded its instruction to the jury, the jury had retired to deliberate, and counsel was lodging objections to the instruction. If caveators wished the court to elaborate on the subject of the capacity to make a contract and the distinction between capacity to contract and capacity to make a will, they should have filed a timely written request to do so. *Ward v. Morris*, 153 Ga. 421 (112 SE 719) (1922). It was not error to refuse the oral request to charge. See *Barnes v. State*, 260 Ga. 398, 399 (3) (396 SE2d 207) (1990); *Kendrick v. Kendrick*, 218 Ga. 460, 461 (2) (128 SE2d 496) (1962). What is more, the probate court gave detailed instruction to the jury on testamentary capacity, and provided it with guidelines to compare testamentary capacity and contractual capacity.[3]

As to the use of the term "lunatic," caveators made no objection to it at the conclusion of the court's instruction;[4] therefore, they may not now complain of it. OCGA § 5-5-24 (a); *Moody v. Dykes,* 269 Ga. 217, 219 (3) (496 SE2d 907) (1998).[5] In any event, caveators fail to

---

[3] Following the language at issue, the court additionally charged:

Even an incapacity to contract is not inconsistent with the capacity to make a Will, as it takes a greater quantum or higher degree of mentality to make a contract than it does to make a Will. The weak have the same rights as the strong-minded to dispose of their property by Will and anything less than a total absence of mind does not destroy that capacity. If the testator has sufficient intellect to enable him to have a rational desire as to the disposition of his property, that is sufficient, and the condition of the testator's mind at the time of the execution of the Will determines whether he can make a valid Will.

[4] Such language was taken from Williamson's request to charge number 18, and caveators' only objections to this portion of the court's jury instruction was the court "not giving an instruction on the mental capacity of contractual capacity," and that it was "repetitive."

[5] This is not a situation in which review is warranted pursuant to OCGA § 5-5-24 (c).

provide any support for the proposition that the use of such term was misleading or prejudicial.

5. There is no merit to caveators' complaint that it was error to charge the jury that "[t]he indulgence of mere suspicion of undue influence cannot be allowed" because it was confusing as to the appropriate burden of proof. The charge is a correct statement of the law. *Harper v. Harper*, 274 Ga. 542, 544 (2) (554 SE2d 454) (2001). And again, the probate court fully charged on the propounder's burden of proof and the caveators' required showing in rebuttal of the prima facie case. See Division 1, supra. Furthermore, the claim that such a charge is not suitable for a jury instruction but is only "to be used when evaluating [whether] a triable issue has been raised" is unavailing. See *Kendrick-Owens v. Clanton*, 271 Ga. 731, 733 (524 SE2d 237) (1999).

6. Finally, caveators' contentions that the probate court erred in failing to give six of their requested jury charges are meritless.[6] Such requests either contained incorrect statements of law, were not adjusted to the facts of the case, or set forth principles of law that were sufficiently and substantially covered in the instruction given by the probate court. *Morrison v. Morrison*, 282 Ga. 866, 867 (3) (655 SE2d 571) (2008); *Chubbuck v. Lake*, 281 Ga. 218, 219 (2) (635 SE2d 764) (2006); *Coile v. Gamble*, 270 Ga. 521, 522 (2) (510 SE2d 828) (1999).

*Case No. S08X1390*

7. The enumerations of error in the cross-appeal are properly addressed only in the event that caveators are successful in the main appeal; consequently, the cross-appeal is moot.

---

[6] The subject requests to charge are those numbered and captioned as follows:

Caveators' Request to Charge No. 8 — "Undue Influence: Types of Evidence to be Considered"

Caveators' Request to Charge No. 10 — "Incapacity Opens Door to Undue Influence"

Caveators' Request to Charge No. 11 — "Undue Influence: Presumption When Beneficiary Not Natural Object of Testator's Bounty"

Caveators' Request to Charge No. 15 — "Confidential Relationship — Power of Attorney"

Caveators' Request to Charge No. 16 — "Undue Influence: Natural Object of Bounty"

Caveators' Request to Charge No. 19 (Paragraph 2) — "Undue Influence: Presumption When Confidential Relationship With Beneficiary and Testator of Weak Mentality."

*Judgment affirmed in Case No. S08A1389. Case No. S08X1390 is dismissed as moot. All the Justices concur.*

DECIDED NOVEMBER 17, 2008.

*Savage, Turner, Pinson & Karsman, Robert B. Turner, Kathryn H. Pickney, Ashleigh R. Madison, Watts & Watts, John C. Watts, Jr.,* for appellants.
*Hunter, Maclean, Exley & Dunn, John M. Tatum, Rachel C. Young, J. Reid Williamson III,* for appellee.