## A10A0326. BLUE CROSS AND BLUE SHIELD OF GEORGIA, INC. v. SHIRLEY.

(699 SE2d 616)

MIKELL, Judge.

A Gwinnett County jury awarded Melanie Suzanne Shirley $52,136.30 in damages in an action she brought against Blue Cross and Blue Shield of Georgia, Inc. ("Blue Cross"), her insurer, for failure to pay a hospital bill. Blue Cross appeals from the judgment entered on the jury verdict, and the denial of its motion for judgment notwithstanding the verdict ("j.n.o.v."), or in the alternative, for a new trial.

1. Blue Cross argues that the trial court erred in denying its motion for j.n.o.v., or in the alternative, for a new trial on Shirley's

---

breach of contract claim. We find no error in the trial court's denial of Blue Cross's motion for j.n.o.v. on this issue, but we conclude that a new trial is required for reasons stated below.

The record here shows that at some time prior to June 2006, Shirley purchased an Individual Hospital/Surgical Contract (the "Contract") from Blue Cross. The first paragraph of the Contract provides as follows:

> This Contract is a LIMITED POLICY designed to offer you catastrophic coverage. The intent of this Contract is to provide benefits for basic inpatient services and outpatient surgical care when medically necessary. Strict limitations apply to other outpatient services. For example, this Contract does NOT cover outpatient medical care including physician office visits, prescription or over-the-counter drugs, nervous and mental care, maternity conditions, physical therapy, durable medical equipment and many other services. Exclusions are explained more fully in the Contract.

Section 3.3 (1) in Article 3 of the Contract, which is entitled "Hospital Inpatient Services," essentially reiterates the introductory paragraph of the Contract, providing as follows:

> This individual direct pay policy is designed to offer you catastrophic coverage. It pays for covered Hospital inpatient care and surgery and selected outpatient services related to inpatient admissions. Strict limitations apply to covered services. For example, this Contract does not cover outpatient medical care including Physician office visits, prescription drugs, nervous and mental care, maternity care, physical therapy, durable medical equipment and many other services. Exclusions are explained more fully in Article 9.

Section 9.1 (1) of Article 9 of the Contract lists "outpatient medical care including Physician office visits" as an item for which the insured will not receive benefits. Article 11, entitled "Conditions Under Which Benefits Shall Be Rendered," defines "hospital inpatient benefits" in Section 11.1 as follows:

> These benefits are available only if you are admitted as a bed patient to a Hospital on the order of a licensed Physician. You must be under the care of this Physician. The Physician must be a member of the staff of, or acceptable to, the Hospital where you are a patient. The service which you

get at a Hospital is subject to all the rules and regulations of the Hospital which you or your Physician selects. Such rules also control Admission policies.

At 5:48 p.m. on June 5, 2006, Shirley sought treatment at North Fulton Regional Hospital's emergency room for chest pain. According to the hospital's "Standard Chest Pain Admission Orders," which includes a section entitled "Status," offering the physician the option to check either "inpatient" or "observation," Shirley was admitted for observation. Almost 23 hours later, Shirley was released. Patricia A. Barton, the hospital's director of business services, testified that the "Standard Chest Pain Admission Orders" is a standard set order used by the hospital and that it is standard for the hospital to determine what information to submit in its billing form from the physician's order; that the universal billing form sent electronically to Blue Cross for Shirley's treatment specified Code 131, which means outpatient discharge, and is determined from the physician's order; that the hospital's billing system electronically codes the billing forms based on the data entered by the registration personnel, who can select inpatient admission, outpatient admission, or observation admission; and that the hospital considers "observation" as outpatient services. Blue Cross denied the claim for services submitted on Shirley's behalf.

After receiving a request for payment from Shirley's counsel, Sharon Moss, a senior legal specialist at Blue Cross, sent a letter to Shirley explaining that the bill was not paid because the claim was billed as outpatient care as Shirley was admitted to an observation room rather than an acute care room or unit for inpatient care and that the Contract did not pay for outpatient care. Moss testified that there was no room and board charge on Shirley's bill; that Blue Cross requires precertification for emergency and hospital admissions but no precertification was required because Shirley was admitted for observation; that Blue Cross received a fax from the hospital on June 6, which indicated that Shirley was admitted for observation; that the hospital called Blue Cross to begin a precertification but that it was voided due to the fact that Shirley was placed in observation; and that the Contract does not include a definition for inpatient or outpatient but that observation means outpatient in the insurance industry.

In the instant case, Shirley presented no evidence other than her testimony to substantiate her claim that she was admitted as an inpatient at the hospital. Instead, she points us to the use of the word "admit" in the medical records, arguing that evidence of her admission and inpatient status was "overwhelming and uncontradicted" as shown in Blue Cross's records, the hospital records, and

the standard dictionary definition of inpatient. As further support for her position, Shirley relies on her testimony that her room contained a hospital bed, medical equipment, and a bathroom, and that she was provided meals, nursing care, and various procedures and tests.

This appeal is governed by our holding in *Michna v. Blue Cross and Blue Shield of Ga.*,[1] in which we interpreted provisions of the same catastrophic coverage policy at issue here under a similar factual scenario and concluded that the policy did not cover the patient's medical bills where the patient was not charged for a room and his stay was less than 24 hours.[2] As we held in *Michna*,[3]

> [i]nsurance in Georgia is a matter of contract and the parties to the contract of insurance are bound by its plain and unambiguous terms. Whether a contract is ambiguous, however, is a question of law for the court. Thus, construction of contracts involves three steps. At least initially, construction is a matter of law for the court. First, the trial court must decide whether the language is clear and unambiguous. If it is, the court simply enforces the contract according to its clear terms; the contract alone is looked to for its meaning. Next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity. Finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by a jury. It is the function of the court to construe the contract as written and not to make a new contract for the parties. . . . Under our law, when a provision in a policy is susceptible to more than one meaning, even if each meaning is logical and reasonable, that provision is ambiguous. Such contracts must be construed against the insurer and in favor of the insured. Nevertheless, language which is unambiguous will not be construed as ambiguous based on extrinsic circumstances, and even though ambiguous exclusions may be construed liberally in favor of the insured and strictly construed against the insurer, this cannot be done when the exclusion is clear and unequivocal.[4]

---

[1] 288 Ga. App. 112 (653 SE2d 377) (2007).
[2] Id. at 114-115.
[3] Supra.
[4] (Citations and punctuation omitted.) Id. at 113-114.

YALE LAW LIBRARY

As stated in *Michna*,[5] although not clearly defined in the Contract, the terms " 'inpatient' and 'outpatient' [are] of common usage among laypeople. Thus, to a layperson, an inpatient 'would imply, at the least, that one would be charged by the hospital for a hospital room.' "[6] And in the construction of contracts, "words . . . generally bear their usual and common meaning."[7] "Unambiguous terms are taken in their plain, ordinary and popular sense as supplied by dictionaries."[8]

We concluded in *Michna* that "[t]he key question is whether [Shirley] was admitted to the hospital as a patient."[9] Like the patient in *Michna*,[10] Shirley sought treatment at a hospital emergency room, was admitted for observation, and released almost 23 hours later. Shirley was not charged for a room. Additionally, there was undisputed evidence from Blue Cross's representative that Shirley was not charged for the room because she was classified as an outpatient for the hospital's billing purposes.

Although Blue Cross asserts as error the denial of its j.n.o.v., it did not move for directed verdict on this issue during the trial of the case.[11] Consequently, Blue Cross could not raise the issue in its motion for j.n.o.v., and it cannot assert the denial of the motion on the breach of contract claim as error on appeal.[12] However, the failure to raise the issue on directed verdict does not preclude Blue Cross from arguing that it is entitled to a new trial on this ground.[13] As in *Michna*,[14] the evidence in this case did not support the verdict because the policy at issue excluded coverage for outpatient services such as those rendered in the instant case. Therefore, we reverse the judgment of the trial court and remand this case for a new trial.

2. In light of Division 1, we need not address Blue Cross's remaining enumerations of error.

3. The dissent is correct that the health insurance policy in the

---

[5] Supra.

[6] Id. at 113.

[7] *Claussen v. Aetna Casualty &c. Co.*, 259 Ga. 333, 334 (1) (380 SE2d 686) (1989); see also OCGA § 13-2-2 (2).

[8] *Michna*, supra at 114.

[9] Id. at 115.

[10] Id. at 112.

[11] Blue Cross moved for a directed verdict on the issue that Shirley assigned her right and benefits under the contract to the hospital and hospital-based physicians, and consequently did not have the right to bring the instant action, which the trial court denied.

[12] *Bailey v. Annistown Road Baptist Church*, 301 Ga. App. 677, 689 (10) (689 SE2d 62) (2009). See also *Famiglietti v. Brevard Med. Investors*, 197 Ga. App. 164, 166 (2) (397 SE2d 720) (1990) ("the j.n.o.v. must be based on grounds raised in the motion for directed verdict initially, for it is in effect only a new ruling on a renewed motion") (citation omitted).

[13] *Aldworth Co. v. England*, 281 Ga. 197, 199-200 (2) (637 SE2d 198) (2006).

[14] Supra.

case at bar may not be identical to the health insurance policy in the *Michna*[15] decision. But the provisions of the two policies, which attempt to restrict coverage to "catastrophic" medical expenses, seem similar if not identical. *Michna* stands for the proposition that the extent of coverage under so-called "catastrophic" health insurance policies can sometimes be decided as a matter of law. Although this is a close case, we continue to believe that the health insurance policy in this case was not ambiguous and that it excluded coverage for the outpatient treatment received by Shirley when she was kept in the emergency department for 23 hours for observation.

*Judgment reversed and case remanded for a new trial. Andrews, P. J., Smith, P. J., and Ellington, J., concur. Johnson, Adams and Doyle, JJ., dissent.*

ADAMS, Judge, dissenting.

I respectfully dissent because the issue in this case is one of fact, not law, and a jury decided that fact in favor of the plaintiff. Accordingly, the case of *Michna v. Blue Cross and Blue Shield of Ga.*, 288 Ga. App. 112 (653 SE2d 377) (2007), is not controlling. Moreover, there is no evidence in the record to show that the policy at issue in *Michna* is exactly the same policy at issue here nor that the hospital in that case had the same policies and procedures.

(a) In the present case, Melanie Shirley had purchased an "Individual Hospital/Surgical Contract" from Blue Cross and Blue Shield of Georgia. The contract was designed to offer only "catastrophic coverage." The contract states that its intent "is to provide benefits for basic inpatient services and outpatient surgical care when medically necessary. Strict limitations apply to other outpatient services." The contract adds that,

> [f]or example, this Contract does not cover outpatient medical care including Physician office visits, prescription drugs, nervous and mental care, maternity care, physical therapy, durable medical equipment and many other services. Exclusions are explained more fully in Article 9.

In Article 9, the contract specifically excludes benefits for "[o]utpatient medical care including Physician office visits." But the contract also expressly provides that "Hospital Inpatient Benefits" are available "if you are admitted as a bed patient to a Hospital on the order of a licensed Physician." And "Physician Services are covered for in-hospital medical care. . . ." The contract defines "Admission" as

YALE LAW LIBRARY

---

[15] Supra.

this: "Begins the first day you become a registered Hospital bed patient and continues until you are discharged." Finally, as Blue Cross admits, the contract it authored does not define "inpatient," "outpatient," or "bed patient." Although the policy provides that "the rules and regulations of the Hospital . . . control admission policies," it appears that no written rules and regulations were introduced into evidence.

Construed in favor of the verdict, the evidence shows that on June 5, 2006 in the afternoon, Shirley went to the emergency room with complaints of chest pain. She was initially seen in the emergency room, but, on the orders of a physician, Shirley spent the night of June 5-6 in the main part of the hospital in order to undergo treatment and testing. She was placed in a room with a bed and bath and served two or three hospital meals during her stay. On June 6, the hospital sought precertification from Blue Cross for Shirley's inpatient status. Blue Cross's own records, which were based on information received from the hospital, indicate that initially, her case was classified "inpatient medical" and that she had been admitted to the hospital. Shirley testified that after being given a clean bill of health, she was discharged on the afternoon of June 6. Blue Cross records also indicate the exact time of admission and discharge: "Admit: 6/5/2006 5:48 PM" and "Disch: 6/6/2006 4:17 PM."

Six days after Shirley's discharge, however, Blue Cross received a fax from the hospital that said "this is a[n] observation case. Thanks." The fax also included a four-page "Clinical Review Summary Report" that indicated "Patient is [sic] observation and will discharge home with no needs." Blue Cross admitted that it voided the precertification request and denied coverage of Shirley's hospital stay expenses based on this fax and claim form, as well as the language of Shirley's contract. Blue Cross admitted that when it denied the claim it did so based on a different version of the contract than Shirley's actual policy. Blue Cross later asserted that it also denied the claim because the hospital claim form did not include a charge for room and board.

Although the Blue Cross representative testified that "bed patient" means the hospital charged for room and board, she admitted the contract does not say that, although a later version of the contract does. She also testified that "observation means outpatient in the insurance industry," but she testified that there is nothing in the contract to that effect. The director of business services for the hospital testified that one of the forms sent to Blue Cross was coded "131," which, she testified, means Shirley was considered an "outpatient discharge." She testified that the clerk who inputs the information that generates the claim form must

indicate whether the physician's order indicates "inpatient admission or outpatient admission, or observation admission." She testified that "observation is considered outpatient services." But she admitted that she did not look at any of the rest of Shirley's medical records and that other records would be relevant to the main issue; for instance, it would be relevant if the doctor's orders indicated that the patient had been "admitted." Shirley presented evidence that a dictionary definition of inpatient is "a patient who is lodged and fed in a hospital, clinic, et cetera, while receiving treatment."

Thus, the main issue in this case is whether Shirley should be considered an inpatient or "bed patient" as opposed to an outpatient under the terms of the contract when she was treated at the hospital on June 5 and 6, 2006.

"Contract construction is a three-step process." (Punctuation and footnote omitted.) *Tillman Park v. Dabbs-Williams Gen. Contractors*, 298 Ga. App. 27, 29 (679 SE2d 67) (2009). If there is no ambiguity, the court determines the meaning of the agreement; if there is ambiguity, the court applies the rules of contract construction; if those rules do not resolve the ambiguity, a question of fact remains for the jury. *Livoti v. Aycock*, 263 Ga. App. 897, 901-902 (2) (590 SE2d 159) (2003).

Here, there is ambiguity because "inpatient" apparently has more than one meaning. The majority opinion concludes that a person is not an inpatient if he is not charged for room and board and the stay is less than 24 hours despite the fact that the contract does not say that. Yet, under the Family Medical Leave Act, "inpatient care" simply means an overnight stay:

> Inpatient care means an overnight stay in a hospital, hospice, or residential medical care facility, including any period of incapacity as defined in [29 CFR] § 825.113 (b), or any subsequent treatment in connection with such inpatient care.

29 CFR § 825.114. And Webster's has defined the term to mean "a patient who is lodged and fed in a hospital, clinic, etc. while receiving treatment." Webster's New World Dictionary 697 (3d College ed. 1988). See also American Heritage Dictionary of the English Language 932 (3d ed. 1992) (defining "inpatient" as "[a] patient who is admitted to a hospital or clinic for treatment that requires at least one overnight stay"). None of these definitions require that the patient be charged for room and board in order to be considered an inpatient, although they may require that the patient be provided room and board. One definition turns on whether the person is "admitted" for "an overnight stay." Thus, it is simply not true that

YALE LAW LIBRARY

the "usual and common meaning" of "inpatient" must include the fact that the patient was charged for room and board or that they stayed more than 24 hours. Even if some definitions include those requirements, clearly other definitions do not; hence, ambiguity.

Moving on to the rules of construction, under Georgia law, insurance policies are "liberally construed in favor of [coverage], and the conditions and provisions of contracts of insurance will be strictly construed against the insurer who prepares such contracts." (Citation and punctuation omitted.) *Hartford Cas. Ins. Co. v. Smith*, 268 Ga. App. 224, 226 (1) (a) (603 SE2d 298) (2004). Construed against Blue Cross, the meaning of inpatient, therefore, can reasonably be construed to mean when the patient is admitted to a room for an overnight stay. The trial judge instructed the jury that "the correct path to determining whether the Plaintiff was an inpatient is to determine whether she was admitted to the hospital." Thus, evidence, which was conflicting, was submitted to the jury to answer that question.

The jury was authorized to disbelieve Blue Cross's testimony about industry practices, and it obviously decided that Shirley had been admitted to the hospital and that therefore she was considered an inpatient. There was evidence to support this conclusion, and therefore the judgment should be affirmed.

The case of *Michna* is not controlling. First, there is no evidence to show that the two cases involve the identical contract or the same hospital. In fact in the present case, Blue Cross's representative testified that Shirley's contract did not require a room and board charge in order to establish inpatient status whereas a subsequent version of the contract did. Second, in *Michna*, the trial court, on summary judgment, considered evidence as to the customs and practices of the hospital and insurance businesses to the effect that a hospital stay of less than 24 hours would be considered an outpatient visit. *Michna*, 288 Ga. App. at 115. Here, no such evidence was presented. Furthermore, the jury here was authorized to disbelieve the one statement made asserting that in the insurance industry, an "admission" for "observation" was considered an outpatient visit. Finally, Shirley presented evidence in this case in the form of hospital records and Blue Cross records indicating that she had been admitted to the hospital, which, as even the Court in *Michna*, agrees, was the "correct path to determining whether [the patient] was an 'inpatient.' " Perhaps Michna was not admitted to the hospital. But evidence was presented to the jury in this case to show that Shirley was.

(b) As a part of her proof, Shirley introduced certified records from the hospital, which Blue Cross stipulated were business records of the hospital. These records contain numerous references to

Shirley being "admitted" to the hospital and to her being an "inpatient."[16] On appeal, Blue Cross contends the records were improperly admitted over its objection. Blue Cross argues that medical records containing diagnostic opinions and conclusions do not fall within the business records exception to the hearsay rule and that, therefore, the medical records should not have been admitted.

At trial, Blue Cross objected to the introduction of any medical opinions found in those records. Shirley explained that she wished to admit the records for the limited purpose of showing that she had been admitted to the hospital and that she was considered an inpatient. Shirley agreed that medical opinion information was irrelevant to the case and she offered to allow Blue Cross to redact that information. Although Blue Cross argued the point, ultimately counsel for Blue Cross stated, "Well, Your Honor, I have no problem if you want to admit them for that limited purpose." The records were then admitted over objection. The court instructed the jury that the documents were admitted "solely as evidence by which you might determine whether the Plaintiff was an inpatient or an outpatient." No reversible error is present.

First, once a record is properly classified as a business record, it "shall be admissible in evidence in proof of the act, transaction, occurrence, or event." OCGA § 24-3-14 (b). And although diagnostic opinions of persons not before the court may not be admissible under the business records exception, see, e.g., *Baker v. State*, 251 Ga. 464, 464 (2) (306 SE2d 917) (1983), the records in this case were introduced only for the limited purposes of showing whether Shirley had been admitted to the hospital. Although Blue Cross complains that such records should not be admitted in toto, it never objected on this ground below.

Second, Blue Cross indicated that it had no problem with admitting the records for the specified limited purpose and it failed to respond to Shirley's offer to redact objectionable material. "Induced error is impermissible. *Edwards v. State*, 235 Ga. 603, 604 (221 SE2d 28) [(1975)]. A party cannot claim error . . . where he himself committed or invited the error. . . . [Cit.]" (Punctuation omitted.) *Westmoreland v. State*, 192 Ga. App. 173, 176 (2) (b) (384 SE2d 249) (1989).

---

[16] The records showed that a nurse completed a "checklist for inpatients" regarding Shirley on June 5, as well as another form that indicates it was to be completed "on Admission." Shirley's diagnosis of chest pain is shown on her "Standard Chest Pain Admission Orders." The same form showed that Shirley's "status" was initially marked "Inpatient" but changed to "Observation." It also shows that she was admitted or transferred to "telemetry." Other forms for "admission data" were completed. These forms were all part of a seven-page "Admission Nursing Assessment" form that was completed on June 5. Another hospital form states that "Consulting Physician will admit patient." Another identifies the "Admitting Physician" as "Bhaskar R Reddy MD, Cardiology."

YALE LAW LIBRARY

Third, Blue Cross complains that the jury may have relied on one or more portions of the medical records that constitute hearsay. But out of a 50-page document, Blue Cross has not identified any specific hearsay statements to which it now objects, and it has not explained how it was harmed thereby. "It is axiomatic that harm as well as error must be shown to authorize a reversal by this court." (Punctuation and footnote omitted.) *Albarran v. State*, 249 Ga. App. 331, 334 (4) (548 SE2d 440) (2001). See also *Kersey v. Williamson*, 284 Ga. 660, 663 (3) (670 SE2d 405) (2008).

Finally, Blue Cross itself introduced one of the hospital records to which it now objects; it admitted the "Admission Orders," through the testimony of a hospital administrator in order to show whether Shirley had been admitted to the hospital.[17] The witness also testified that all of the medical records could be relevant to a determination about a patient's status. Thus, Blue Cross's own witness indicated that it was the forms themselves that were relevant to the principal issue. Moreover, Blue Cross has not shown how the hospital record it introduced was different from any of the other hospital records nor why the other records should be considered harmful whereas this one was not.

In short, I would hold that there was no reversible error regarding admission of the hospital records.

I am authorized to state that Judge Johnson and Judge Doyle join in this dissent.

DECIDED JULY 15, 2010 —
RECONSIDERATION DENIED JULY 30, 2010 — 

*Troutman Sanders, Jaime L. Theriot*, for appellant.
*Jason C. Waymire*, for appellee.

---

[17] That form indicates that Shirley's status was initially marked "Inpatient" but changed to "Observation" at some undetermined point.