A11A0693, A11A0932. IN THE INTEREST OF N. W., a child
(two cases).

(710 SE2d 832)

ADAMS, Judge.

In the three days immediately following a hearing on the permanency plan of a deprived child, the child advocate filed motions that contested the oral pronouncement of the juvenile court, even though the court had yet to issue a written order. The advocate also sought an emergency hearing on placement of the child. The juvenile court dismissed the three motions in part on the ground that they were premature. The child advocate appeals several aspects of these dismissals.

The record shows that N. W. tested positive for cocaine at birth on Monday, August 10, 2009. That Friday, the child was placed in shelter care with a foster family. In the following days and weeks, the Fulton County Department of Family and Children Services (DFACS) filed a deprivation complaint, a deprivation petition, and an amended petition. In the amended petition, DFACS alleged, among other things, that the mother also tested positive for cocaine at the time of N. W.'s birth; that she used drugs, was without resources, and was unable to care for the child; that she had failed at drug treatment and failed to remain drug free; that the father failed to prevent the child from being exposed to drugs; that the paternal grandparents were unwilling to take N. W. because they already had custody of a sibling and the mother was verbally aggressive toward them; that no other relatives had come forward; and that the permanency plan was termination of parental rights followed by adoption. The juvenile court conducted a hearing on the deprivation petition, to which the parents had stipulated, and found the child to be deprived. The child remained with the foster family.

Despite DFACS's plan for adoption, the child advocate filed a motion for nonreunification, to which the parents stipulated, and the court held a hearing. In an order dated October 30, 2009, the court determined that reunification was not appropriate, but the court noted that the paternal grandparents had "changed their minds about having the child placed with them," and they were "now being evaluated by the Department as a possible placement option for the child." On February 15, 2010, a judicial citizen review panel conducted a hearing and recommended placement with a fit relative. On February 16, however, the child advocate objected to the panel's plan and asked for another hearing.

A judge pro tempore of the juvenile court held a hearing on March 8, 2010, but no transcript is in the record. According to the briefs and colloquy at a later hearing, the judge pro tempore announced in open court that he would adopt the recommendation of

the panel and order placement with a fit and willing relative. DFACS moved the child from the foster parents to the grandparents the next day. Nevertheless, the judge pro tempore did not issue a written order until March 25.

In the meantime, on March 9, 10 and 11, without waiting for a written order, the child advocate filed the following three motions:

1. "Motion for Emergency Reconsideration on Notice of Objection and Motion for Hearing on Citizens Panel's Review Proposed Permanency Plan and DNA Test";

2. "Motion for Emergency Transfer of Custody"; and

3. Motion for an "Emergency Review Hearing."

In these motions, respectively, the child advocate contested the father's paternity — suggesting that the paternal grandparents might not really occupy that status, and argued that, therefore, the foster parents should also be considered in the plan for the child; he argued that custody should be restored to the foster parents immediately because of the paternity issue; and he argued that DFACS failed to give five days notice of a change in placement of the child in accordance with OCGA § 15-11-55 (d). DFACS responded to each motion.

On March 18, assigned Judge Bradley Boyd held a hearing regarding the child advocate's motions. On the same day, Judge Boyd dismissed Motion No. 1 (for reconsideration) and No. 3 (for an emergency hearing) as premature, given that no written order had been entered following the March 8 hearing. Judge Boyd also dismissed Motion No. 2 (for transfer of custody) because the motion failed to state a relevant reason for a change in custody or "for abandoning the planning, recommending, and review process set out in the Juvenile Court Code." The order was filed on March 24. In a second order, filed March 25, the court reiterated that Motion No. 1 was premature and added that given the legal father was not contesting paternity, and that no other person was claiming paternity, it would not be in the best interest of the child "to order a test for the purpose of delegitimating the child." It is these two orders issued by Judge Boyd that are now on appeal.[1] These cases are consolidated for the purposes of appeal.

After the child advocate filed notices of appeal, the judge pro tempore finally filed a written order nunc pro tunc March 8, 2010, on the child advocate's objection to the recommendation of the citizen review panel, in which the judge adopted the panel's recommenda-

---

[1] On March 26, the child advocate filed two notices of appeal in the juvenile court. In Case No. A11A0693, he appealed Judge Boyd's order filed March 25, and in Case No. A11A0932, he appealed Judge Boyd's order filed March 24.

tion over the child advocate's objection and ordered the child placed with a fit and willing relative. This order is not before us, nor is the effect of the order given that notices of appeal had been filed before the order was filed.

1. The child advocate contends the court erred by dismissing Motion No. 1 (for reconsideration) on the ground that it was premature. We disagree. Only one day after the March 8, 2010 hearing, the child advocate sought reconsideration of the juvenile court's oral pronouncement at the hearing.

Entry of a judgment occurs when it is filed with the clerk "and, unless the court otherwise directs, no judgment shall be effective for any purpose until the entry of the same, as provided in this subsection." OCGA § 9-11-58 (b). See also *Titelman v. Stedman*, 277 Ga. 460, 461 (591 SE2d 774) (2003); *Shirley v. Abshire*, 288 Ga. App. 819, 820 (655 SE2d 694) (2007). The child advocate has not shown that the juvenile court otherwise directed that its oral pronouncement was effective on that day. Thus, the motion to reconsider was premature.

As a consequence, in this appeal, the child advocate cannot complain about the issues addressed at the March 8 hearing. These include, at a minimum, the propriety of the permanency plan approved by the citizen review panel and placement of the child with a fit and willing relative. Other topics may have been addressed, but there is no transcript in the appellate record of the March 8 hearing.

2. The child advocate contends the court erred by dismissing Motion No. 3 (for emergency review) filed under OCGA § 15-11-55 (d). He contends he never received notice that the child was going to be moved from the foster parents to the grandparents on March 9, 2010, and that he properly requested a hearing to address the child's permanency plan.

In this setting, DFACS is required to give the child advocate five days advance notice of any placement change:

> Not less than five days in advance of any placement change, the division shall notify the court . . . and any attorney of record of such change in the location of the child's placement while the child is in the division's custody[.]

OCGA § 15-11-55 (d). Yet DFACS failed to provide actual notice as required by the statute. There is simply nothing in the record to show that DFACS gave specific notice that it intended to move the child on March 9. Nevertheless, even assuming that strict as opposed to substantial compliance with this notice provision was required, reversible error requires a showing of harm as well as error. *In the Interest of D. W.*, 294 Ga. App. 89, 94 (3) (a) (668 SE2d 533) (2008).

See also *Kersey v. Williamson*, 284 Ga. 660, 663 (3) (670 SE2d 405) (2008).

The notice specified under OCGA § 15-11-55 (d) provides the parties an opportunity to request a hearing so the court can consider a change in the child's placement and the effect of the change on the case plan:

> [A]ny attorney of record may request a hearing with regard to the child's case plan or the permanency plan in order for the court to consider the change in the location of the child's placement and any changes to the case plan or permanency plan resulting from the child's change in placement location.

OCGA § 15-11-55 (d). But in this case, almost the same topics had just been considered at the March 8 hearing, which was held at the advocate's request, only two days prior to his motion for another hearing. The hearing addressed, at a minimum, the propriety of the approved permanency plan and placement of the child with a fit and willing relative, which, as is undisputed, meant the paternal grandparents. As stated above, the decisions on those issues are not before us. Indeed, as admitted by the child advocate at oral argument, at this point in time, he is not contesting placement with the paternal grandparents. Rather, he asserts that if he had received the requested hearing, he would have sought to require that DFACS take steps to ease the child's transition from the foster parents — the only parents the child had known for the first seven months of his life — to the paternal grandparents. This transition, however, is now 14 months in the past.

In sum, we conclude that the manner in which the child's transition occurred is now moot. And the child advocate has not shown any other harm resulting from DFACS's failure to provide notice that it was moving the child or by granting another hearing.

*Judgment affirmed. Barnes, P. J., and Blackwell, J., concur.*

DECIDED MAY 17, 2011.

*Nathan A. Hayes*, for appellant.

*Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Elizabeth M. Williamson, Assistant Attorney General, Lytia G. Brown, Abdulhakim Saadiq*, for appellee.