**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**August 1, 2005**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

FARMINGTON CASUALTY
COMPANY, a Connecticut
corporation,

      Plaintiff-Appellant,

    v.

RICK DUGGAN,

      Defendant-Appellee.

No. 04-1200

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**(D.C. NO. 02-Z-1205-CBS)**

---

Kevin F. Amatuzio, John R. Chase, and Susan Prose, Montgomery, Kolodny, Amatuzio & Dusbabek, L.L.P., Denver, Colorado, for Plaintiff-Appellant.

Jerre W. Dixon, Dixon and Snow, P.C., Denver, Colorado, for Defendant-Appellee.

---

Before **HARTZ**, **McKAY,** and **McCONNELL**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

I.

Without so much as the blast of a shofar, the perimeter masonry block walls

of Defendant-Appellee Rick Duggan's partially constructed office building in Golden, Colorado, came tumbling down in a high wind in December 1997. An arbitrator attributed the event primarily to the negligence of the subcontractor, Masonry Designs, which allowed the supportive braces to be removed prematurely and also performed substandard masonry work. The arbitrator ordered Masonry Designs to pay Mr. Duggan over $500,000 in compensation. This turned out to be little comfort when Masonry Designs went out of business. Mr. Duggan had not obtained a performance bond, which is the usual way the owner of a construction project protects itself against losses caused by contractor negligence. Fearing that it would be the next deep pocket, Plaintiff-Appellant Farmington Casualty Company, which had issued Masonry Designs a commercial general liability policy, brought suit against Mr. Duggan seeking a declaratory judgement that its policy did not cover the arbitrator's award against Masonry Designs. Following a bench trial, the district court concluded that Farmington's policy did cover the arbitrator's award. Farmington appeals, and we reverse.

## II.

We review de novo the district court's interpretation of the insurance policy. *Old Republic Ins. Co. v. Durango Air Serv., Inc.*, 283 F.3d 1222, 1225 (10th Cir. 2002). We apply Colorado law, interpreting the policy as we think a Colorado court would. *Reg'l Bank of Colorado v. St. Paul Fire and Marine Ins.*

2

*Co.*, 35 F.3d 494, 496 (10th Cir. 1994).

The purpose of a commercial general liability policy is to protect the insured from liability for damages when his own defective work or product damages someone else's property. *Hartford Acc. & Indem. Co. v. Pacific Mut. Life Ins. Co.*, 861 F.2d 250, 253 (10th Cir. 1988). Damage to an insured's own work resulting from his faulty workmanship on it is usually covered by a performance bond, not a commercial general liability policy. *Id.*; *see also Union Ins. Co. v. Hottenstein*, 83 P.3d 1196, 1202 (Colo. Ct. App. 2003) (approving conclusion that "finding the breach of a business contract to be a [covered] occurrence would distort the purpose of liability insurance policies"); *A. D. Irwin Investments, Inc. v. Great Am. Ins. Co.*, 475 P.2d 633, (Colo. Ct. App. 1970) ("[An insurer] d[oes] not, by its contract of liability insurance, become a guarantor of perfect performance."); Lee R. Russ & Thomas F. Segalla, 9 *Couch on Insurance* § 129:11 (3d ed. 1995 & Supp. 2005) ("Most policies of commercial general liability insurance exclude the insured's faulty workmanship from coverage. The rationale for such exclusions is that faulty workmanship is not an insurable 'fortuitous event,' but a business risk to be borne by the insured.").

In district court, Farmington pointed to a number of provisions of the commercial general liability policy it sold to Masonry Designs that, it contended, precluded coverage for the collapsed walls. The district court disagreed on all

3

points. On appeal, Farmington reiterates arguments relating to four of the policy's provisions, but in order to prevail, it need only be correct as to any one of them. We therefore address one of Farmington's arguments, which we consider valid, and express no opinion as to the other three.

Section I(A)(1) of the Commercial General Liability Coverage Form (CGLCF) at issue provides coverage for sums the insured becomes legally obligated to pay as damages because of "property damage" caused by an "occurrence." However, the policy does not cover property damage resulting from shoddy work; rather, it excludes from coverage damage to "[t]hat particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." *Id.* § I(A)(2)(j)(6). An exception to this exclusion extends coverage to property damage included in the "products-completed operations hazard," § I(A)(2)(j)(6), but that subsection in turn excludes work that has not yet been completed. *Id.* § V(11)(a)(2). The end result of this exclusion from an exception to an exclusion is that faulty work is covered as property damage only if the work has been completed. Work is completed "[w]hen all of the work called for in your contract has been completed." *Id.* § V(11)(b)(1).

The contract between Schubert (the general contractor) and Masonry (a subcontractor) required Masonry not only to build the masonry block walls but

4

also to "clean [the] walls with [a] light acid solution." Aplt. App. 125. The district court found as a fact that only one-third of the acid-washing had been completed when the walls fell. Dist. Ct. Op. 4. Notwithstanding this finding, the district court concluded that, for purposes of the products-completed operations hazard, "[t]he work called for in Masonry Design's contract with Schubert was completed when the walls fell." *Id.* at 7. Farmington contends this conclusion was in error, and we agree.

The district court offered two justifications for its conclusion. First, the court identified a potential ambiguity in the definition of "your work" as it relates to the products-completed operations hazard. Exclusion J(6) excludes from coverage property damage caused by the faulty performance of "your work." The district court observed that the definition of "your work" is not restricted to work called for in the contract, but includes "[m]aterials, parts or equipment furnished in connection with such work or operations." CGLCF § V(15)(b). "Your work" is deemed completed, however, when the work called for in the contract is complete. *Id.* § V(11)(b)(1). The district court concluded that the intersection of these two provisions created an ambiguity; for purposes of determining what work falls within Exclusion J(6), "your work" includes work not specifically called for in the contract, but for purposes of determining when work is completed, only work called for in the contract is considered. Having discovered an ambiguity,

5

the district court resolved it in favor of coverage, as required by Colorado law. Dist. Ct. Op. at 6–7, citing *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 299 (Colo. 2003). Next, the district court determined that the work called for in the contract was mostly complete when the walls fell and that mostly complete is good enough to fall within the products-completed operations hazard. Neither of these justifications is persuasive.

The fact that the policy sometimes restricts the definition of "your work" to the work called for in the contract, and sometimes defines "your work" more broadly to include "[m]aterials, parts or equipment furnished in connection with" the contractual work, makes no difference with respect to Masonry Designs' acid washing. Acid washing was required under the contract, and the district court found as a fact that the acid washing had not been completed at the time the walls fell. The relevant coverage under the policy kicks in only after the work has been completed. So even if, when determining whether or not the work had been completed, we choose the narrower definition of "your work" (namely, the work specified in the contract) and construe the policy in favor of coverage, Masonry loses.

The district court also erred in adopting a substantial completeness test. While acknowledging that only one-third of the acid washing was complete when the walls collapsed, the district court characterized the remaining work as "*de*

6

*minimis* given the scope and nature of Masonry Design's work on the project."
Dist. Ct. Op. at 7. Three weeks after the district court issued its opinion, the
Colorado Court of Appeals held that a substantially similar products-completed
operations hazard provision was unambiguous and excluded coverage unless all
the work called for in the contract was complete when the damage occurred.
*McGowan v. State Farm Fire and Cas. Co.*, 100 P.3d 521, 526 (Colo. Ct. App.
2004). A provision that applies when all the work is completed applies only when
*all* the work has been completed: "the plain language of the products-completed
operations hazard provision belies th[e] assertion" that the provision can operate
when only part of the work is completed. *Id.*

The district court found that the acid washing explicitly called for in the
contract was only one-third complete when the walls came tumbling down, and
that is the end of the matter. Exclusion J(6) excludes the damage from coverage,
and the decision of the district court is **REVERSED.**

7