**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 17, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

MUSCLEPHARM CORPORATION,

     Plaintiff - Appellant,

v.

LIBERTY INSURANCE
UNDERWRITERS, INC.,

     Defendant - Appellee.

No. 16-1462
(D.C. No. 1:15-CV-00555-REB-KMT)
(D. Colo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **HARTZ**, and **BACHARACH**, Circuit Judges.
_____

    Plaintiff-Appellant MusclePharm Corporation ("MusclePharm") appeals the district court's grant of summary judgment in favor of Defendant-Appellee Liberty Insurance Underwriters, Inc. ("Liberty"). This insurance coverage lawsuit arises from a United States Securities and Exchange Commission (the "SEC") investigation of MusclePharm ("the investigation"). We exercise jurisdiction in this diversity action pursuant to 28 U.S.C. §§ 1291 and 1332 and affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

**I.**

*Factual Background*

*The Policy*

MusclePharm and Liberty entered into an insurance agreement for the period beginning on January 6, 2013 and ending on January 6, 2014. The agreement, a "claims made policy," covered "claims first made against" MusclePharm "during the policy . . . or discovery period[s], . . . and reported to" Liberty "as soon as practicable but . . . no . . . later than 60 days after the end of the policy . . . or discovery period[s]." Aplt. App., at 297 (emphasis omitted).

> Insuring Agreement 1.2 generally governed the parties' relationship. It states:
>
> **Insured Organization Reimbursement**: The Insurer shall pay on behalf of the **Insured Organization** all **Loss** which is permitted or required by law to indemnify the **Insured Persons** as a result of a **Claim** first made during the **Policy Period** or **Discovery Period**, if applicable, against the **Insured Persons** for a **Wrongful Act** which takes place before or during the **Policy Period**.

Id. at 299 (emphasis in original).

The policy provides that an **"Insured Organization"** is "any entity named in Item 1 of the Declarations." Id. at 306. And, "MusclePharm Corporation" is named in Item 1. See id. at 297. "**Insured Persons**" are defined in relevant part as "one or more natural persons who were, now are, or shall hereafter be duly elected or appointed directors or officers of the Insured Organization." Id. at 306. "**Loss**" is defined as "sums which the **Insured Persons** . . . are legally obligated to pay solely as a result of any **Claim** insured by the Policy, including **Defense Costs**." Id.

2

(emphasis in original). "**Defense costs**" are "reasonable and necessary fees

(including attorneys' fees and experts' fees) and expenses incurred in the defense of a

**Claim**." Id. at 305 (emphasis in original).

The policy defines and Endorsement No. 26 amends the term "**Claim**" through

three relevant parts, as follows:

> (a) a written demand for monetary or non-monetary relief against an **Insured Person** or, with respect to Insuring Agreement 1.3, against the **Insured Organization**; including a request to toll the statute of limitations; . . .
> (c) a formal administrative or regulatory proceeding against an **Insured Person**;
> (d) a formal criminal, administrative, or regulatory investigation against an **Insured Person** when such **Insured Persons'** [sic] receives a Wells Notice or target letter in connection with such investigations.

Id. at 340 (emphasis in original).

> "**Wrongful Act**" is described in two parts as:

> (a) any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty, actually or alleged[ly] committed or attempted by the **Insured Persons** in their capacities as such or in an **Outside Position**, or, with respect to **Insuring Agreement** 1.3, by the **Insured Organization**; or
> (b) any matter claimed against the **Insured Persons** solely by reason of their status as **Insured Persons**.

Id. at 307 (emphasis in original).

Finally, the policy contains a "**Notice of Circumstance or Wrongful Act**"

provision in Section 8, which states:

> **Notice of Circumstance or Wrongful Act**: If during the **Policy Period** the **Insureds** become aware of any circumstance or **Wrongful Act** that reasonably may be expected to give rise to a **Claim**, and if such circumstance or **Wrongful Act** is reported to the Insurer during the **Policy Period** in writing with details as to the nature and date of such

3

circumstance or **Wrongful Act**, the identity of any potential claimant, the identity of any **Insured Person** involved in such circumstance or **Wrongful Act**, and the manner in which the **Insureds** first became aware of such circumstance or **Wrongful Act**, then any **Claim** subsequently arising from such circumstance or **Wrongful Act** shall be deemed under this Policy to be a **Claim** made during the **Policy Period** in which the circumstance or **Wrongful Act** was duly reported to the Insurer.

Id. at 302 (emphasis in original).

*The SEC Investigation*

On May 16, 2013, the SEC mailed a letter to MusclePharm stating that it was "conducting an inquiry into MusclePharm" and "requesting that MusclePharm voluntarily produce documents" (the "May 16 letter"). Id. at 353. The letter noted, "[t]his inquiry is non-public and should not be construed as an indication that the Commission or its staff believes any violation of law has occurred, nor should you consider it an adverse reflection upon any person, entity, or security." Id. MusclePharm complied.

Later, on July 8, 2013, the SEC issued an "Order Directing Private Investigation and Designating Officers to Take Testimony" (the "July 8 Order") to MusclePharm. Id. at 291. The July 8 Order stated that the SEC "has information that tends to show that from at least January 1, 2011," MusclePharm "possibl[y]" violated provisions of the Securities Act of 1933 and the Exchange Act of 1934. Id. at 292–94. It ordered "that a private investigation be made to determine whether any persons or entities have engaged in, or are about to engage in, any of the reported acts or practices or any acts or practices of similar purport or object." Id. at 294. It

4

also noted that specific SEC officers may "administer oaths and affirmations, subpoena witnesses, compel their attendance, take evidence, and require the production of books, papers, correspondence, memoranda, or other records deemed relevant or material to the inquiry." Id. at 295. The footer of each page of the July 8 Order contained the following disclaimer: "it should be understood that the Commission has not determined whether any of the persons or companies mentioned in the order have committed any of the acts described or have in any way violated the law." See id. at 291–95.

Thereafter, the SEC issued 21 subpoenas to MusclePharm and to individual officers and directors. The subpoenas instructed MusclePharm to produce documents. The subpoenas also required individuals to produce documents and to appear for testimony. Cover letters accompanied the subpoenas and noted that "[t]he investigation is confidential and nonpublic and should not be construed as an indication by the Commission or its staff that any violation of the law has occurred, or as a reflection upon any person, entity, or security." See, e.g., id. at 424.

On February 13, 2015, the SEC issued Wells Notices[1] to Donald Prosser, MusclePharm's Chief Financial Officer at the time, and to Gary Davis, MusclePharm's former Chief Financial Officer. The Wells Notices stated that the SEC "has made a preliminary determination to recommend that the Commission file

_____

[1] A Wells Notice is an alert "that the SEC's Enforcement Division is close to recommending to the full Commission an action against the recipient and provides the recipient the opportunity to set forth his version of the law or facts." Aplt. App., at 70 n.6 (quoting SEC v. Orr, 2012 WL 1327786, at *3 (D. Kan. Apr. 17, 2012)).

an enforcement action against" Prosser and Davis. Aplt. App., at 375, 377. On September 8, 2015, the parties settled and the SEC issued Cease-and-Desist Orders against MusclePharm, Prosser, Davis, and two other executives. MusclePharm alleges that it spent more than $3 million responding to the investigation, including more than $1,319,539.73 for "legal and related expenses" and more than $1,708,868.29 in indemnification costs.

*The Coverage Dispute*

On June 20, 2013, MusclePharm sought coverage from Liberty under the policy for its expenditures, attaching the SEC's May 16 letter, and stating that if the SEC's May 16 letter "d[id] not arise to the level of a claim, then" MusclePharm would like it "considered a notice of circumstance." See id. at 351. On August 21, 2013, MusclePharm forwarded to Liberty the SEC's July 8 Order. On September 18, 2013, based on the May 16 letter and the July 8 Order, Liberty denied coverage. However, Liberty treated the matter as a notice of circumstance under the policy. On May 19, 2015, Liberty wrote that, with the SEC's issuance of Wells Notices to Prosser and to Davis on February 13, 2015, "this matter appears to qualify as an investigation against Insured Persons." Id. at 382. Liberty has stated that it intends to cover post-Wells notice costs "incurred in connection with a covered claim against Insured Persons," but it insists that MusclePharm has not yet explained how it calculated its costs. Aplee. Br., at 16 n.9, 16–17.

6

***Procedural Background***

On February 12, 2015, one day prior to the SEC's issuance of Wells Notices, MusclePharm filed in Colorado state court a three-count complaint against Liberty for breach of contract and statutory and common law bad faith breach of insurance contract. Specifically, MusclePharm asserted that the SEC investigation was a "claim" within the meaning of the policy and Liberty must cover all "loss," as defined in the policy, which MusclePharm incurred in connection with the covered claim. Id. at 15. On March 18, 2015, Liberty removed the action to the United States District Court for the District of Colorado under 28 U.S.C. §§ 1446, 1441, and 1332.

The parties filed cross motions for summary judgment. The district court granted Liberty's motion for summary judgment, denied MusclePharm's motion, and dismissed its claims. The district court determined "that the July 8 Order did not allege a 'Wrongful Act' within the meaning of the Policy." Aplt. App., at 74. The court concluded that Liberty did not have a duty to indemnify MusclePharm for costs that it incurred prior to the Wells Notices, and it "had a good faith basis, rooted in the language of the Policy and relevant caselaw, to deny coverage." Id. at 75. The court entered judgment in Liberty's favor on that same day. MusclePharm timely filed a motion for reconsideration pursuant to Federal Rule of Civil Procedure 59(e), tolling the time to appeal. See Fed. R. App. P. 4(a)(4)(A)(iv). The district court denied the motion to reconsider. MusclePharm timely appealed.

7

## II.

### *Analysis*

MusclePharm raises six issues on appeal. With respect to the denial of its motion for summary judgment, MusclePharm argues that the district court misconstrued the policy terms "claim" and "allege" and therefore erred in concluding that its expenses incurred in responding to the July 8 Order and the related subpoenas are not covered under the policy. MusclePharm also contends that the district court should have addressed "Liberty's refusal to pay all post-Wells Notice defense costs" and discussed the impact of the policy's notice of circumstance provision. As regards the denial of its motion to reconsider, MusclePharm claims that the district court abused its discretion by not considering the absence of exclusionary language in the policy at issue, and by not taking judicial notice of a Liberty policy found online that contained exclusionary language. Finally, MusclePharm asserts that the district court should have considered the affidavit of its expert witness, Peter Kochenburger, which explained the purpose and effect of notice of circumstance provisions.

### *Standards of Review: Summary Judgment and Insurance Policy Interpretation*

This court reviews a grant of summary judgment de novo, applying the same legal standard used by the district court under Fed. R. Civ. P. 56(a). Twigg v. Hawker Beechcraft Corp., 659 F.3d 987, 997 (10th Cir. 2011). We affirm if "'there is no genuine dispute as to any material fact' and the moving party is 'entitled to judgment as a matter of law.'" Carter v. Pathfinder Energy Servs., Inc., 662 F.3d

8

1134, 1138 (10th Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). "A fact is 'material' if under the substantive law it could have an effect on the outcome of the lawsuit. An issue is 'genuine' if a rational jur[or] could find in favor of the nonmoving party on the evidence presented." Adams v. Am. Guarantee and Liab. Ins. Co., 233 F.3d 1242, 1246 (10th Cir. 2000) (citation omitted). "On cross-motions for summary judgment, . . . we must view the inferences to be drawn from affidavits, attached exhibits and depositions in the light most favorable to the party that did not prevail." Jacklovich v. Simmons, 392 F.3d 420, 425 (10th Cir. 2004) (citation omitted).

This court also "review[s] de novo the district court's interpretation of [an] insurance policy." Farmington Cas. Co. v. Duggan, 417 F.3d 1141, 1142 (10th Cir. 2005). In this diversity action, "[w]e apply Colorado law, interpreting the policy as we think a Colorado court would." Id. "Colorado courts 'construe the plain language of the contract to effectuate the intent of the parties, and . . . resolve ambiguities in favor of the insured.'" Fidelity Nat'l Title Ins. Co. v. Woody Creek Ventures, LLC, 830 F.3d 1209, 1213 (10th Cir. 2016) (quoting Radil v. Nat'l Union Fire Ins. Co. of Pittsburg, 233 P.3d 688, 692 (Colo. 2010)). "The Colorado Supreme Court generally relies on case law from other jurisdictions and recognized dictionary definitions to establish the plain and ordinary meaning of undefined terms in a contract." Id. A contract should be interpreted "in its entirety with the end in view of seeking to harmonize and to give effect to all provisions so that none will be rendered meaningless." Copper Mountain, Inc. v. Indus. Sys., Inc., 208 P.3d 692, 697 (Colo. 2009) (en banc) (citation omitted).

9

*The Policy Definition of "Claim"*

MusclePharm first argues that the district court misconstrued the policy's definition of the term "claim." We disagree, and conclude that MusclePharm is not entitled to recover its expenditures resulting from the July 8 Order and related subpoenas as these expenditures are not covered under the policy.

Insuring Agreement 1.2 generally governed the parties' relationship. It states:

> **Insured Organization Reimbursement**: The Insurer shall pay on behalf of the **Insured Organization** all **Loss** which is permitted or required by law to indemnify the **Insured Persons** as a result of a **Claim** first made during the **Policy Period** or **Discovery Period**, if applicable, against the **Insured Persons** for a **Wrongful Act** which takes place before or during the **Policy Period**.

Id. at 299 (emphasis in original). The policy defines "**Claim**" through three relevant parts:

> (a) a written demand for monetary or non-monetary relief against an **Insured Person** or, with respect to Insuring Agreement 1.3, against the **Insured Organization**; including a request to toll the statute of limitations;
> . . .
> (c) a formal administrative or regulatory proceeding against an **Insured Person**;
> (d) a formal criminal, administrative, or regulatory investigation against an **Insured Person** when such **Insured Persons'** [sic] receives a Wells Notice or target letter in connection with such investigations.

Aplt. App., at 340 (emphasis in original).

Thus, for coverage under the policy, the following elements must be present: (i) there must be a claim; (ii) the claim must be made during the policy period; (iii) the claim must be lodged against an insured person or an insured organization; and (iv) the claim must be for a wrongful act. These four requirements for coverage were

10

not met until the SEC issued Wells Notices on February 13, 2015. Prior to that time, the SEC had not alleged a "wrongful act," nor had it targeted a specific insured person. The SEC's issuance of Wells Notices triggered part (d) of the policy's "claim" definition, as the district court held and the parties do not dispute. Therefore, the issue presented is narrowed to whether the July 8 Order and the related subpoenas fall within parts (a) or (c). We conclude they do not.

MusclePharm argues that the SEC subpoenas are covered under part (a) because they are written demands for non-monetary relief. In support of its position, MusclePharm cites to a trial court decision from New York, Syracuse University v. National Union Fire Insurance Company of Pittsburgh, which rejected the idea that a subpoena is "a mere discovery device," and instead agreed with cases holding that "government issued subpoenas and other document requests are demands for non-monetary relief" because "relief" is "broad enough to include a demand for 'something due.'" 975 N.Y.S.2d 370 (table), 2013 WL 3357812, at *2 (N.Y. Sup. Ct. 2013) (citation omitted). Further, MusclePharm analogizes the facts of this case to an unpublished Northern District of Illinois decision, Minuteman International, Incorporated v. Great American Insurance Company, which held that an SEC subpoena constituted "a demand for relief" because a subpoena is "a substantial demand for compliance by a federal agency with the ability to enforce its demands." No. 03 C 6067, 2004 WL 603482, at *7 (N.D. Ill. Mar. 22, 2004). However, neither ruling is based on the plain meaning of "relief." See Fidelity Nat'l Title Ins. Co. v. Woody Creek Ventures, LLC, 830 F.3d 1209, 1213 (10th Cir. 2016) ("Colorado

11

courts 'construe the plain language of the contract to effectuate the intent of the parties, and' . . . . The Colorado Supreme Court generally relies on case law from other jurisdictions and recognized dictionary definitions to establish the plain and ordinary meaning of undefined terms in an insurance contract.") (citation omitted).

The policy at issue here does not define "relief," so we must turn to dictionary definitions to establish its plain and ordinary meaning. See id. "Relief" is defined as "legal remedy or redress," or as "[t]he redress or benefit," especially "equitable in nature (such as an injunction or specific performance), that a party asks of a court." Definition of RELIEF, Merriam-Webster, https://www.merriam-webster.com/dictionary/relief (last visited Oct. 12, 2017); Black's Law Dictionary (10th ed. 2014). The July 8 Order states that the investigation is "be[ing] made to determine whether any persons or entities have engaged in, or are about to engage in, any of the reported acts or practices or any acts or practices of similar purport or object." Aplt. App., at 294. Thus, the SEC sought to determine, through documents and testimony, whether there would ultimately be any basis for seeking monetary and/or non-monetary relief from MusclePharm. By this action, the SEC was not seeking relief, but was only gathering information.

Cases arising in similar contexts support the conclusion that the July 8 Order and the related subpoenas were not written demands for non-monetary relief as defined by part (a) of the policy. In an unpublished decision, the Sixth Circuit held that subpoenas and civil investigative demands sent by the Federal Trade Commission "sought information related to" its "investigation, not a remedy

12

provided by a court," excluding them from the plain definition of "relief," and therefore from constituting a "claim" under the policy at issue. Employers' Fire Ins. Co. v. ProMedica Health Sys., Inc., 524 F. App'x 241, 252 (6th Cir. 2013). In contrast, the Southern District of New York held in Patriarch Partners, LLC v. AXIS Insurance Company that "non-monetary relief" includes an SEC subpoena. 2017 WL 4233078, at *5–6 (S.D.N.Y. Sept. 22, 2017). But in so holding it noted, "[h]ad the parties in this case intended to exclude a subpoena where there was no assertion of civil or criminal liability from the definition of a 'Claim,' they could have done so by limiting coverage to demands for non-monetary relief that allege a 'Wrongful Act.'" Id. at *5. That is exactly what MusclePharm and Liberty did here: the policy at issue, like that in ProMedica, "require[d] that 'relief' be 'for a Wrongful Act.'" 524 F. App'x at 253.

Under the policy, the insured does not have a covered "claim" without an allegation of wrongdoing against an insured person, and the SEC stated in both the July 8 Order and the related subpoenas that these documents were not alleging wrongdoing. Specifically, these documents noted, "the Commission has not determined whether any of the persons or companies mentioned in the order have committed any of the acts described or have in any way violated the law," Aplt. App., at 291–95, and "[t]he investigation . . . should not be construed as an indication by the Commission or its staff that any violation of the law has occurred, or as a reflection upon any person, entity, or security." Id. at 424.

13

Thus, we conclude that the July 8 Order and the related subpoenas are not covered under part (a).

MusclePharm also contends that the July 8 Order "constitutes a formal administrative or regulatory proceeding" under part (c) of the "claim" definition because it "is authorized by Section 20(a) of the Securities Act and Section 21(a) of the Exchange Act," and because its caption "states that it is a proceeding of the United States of America Before the Securities and Exchange Commission." Aplt. Opening Br., at 27–28. However, the mere fact that the July 8 Order is captioned as a "proceeding" does not result in its coverage under the policy.

Because the policy did not define "investigation" or "proceeding," we turn to the plain meaning of these terms and conclude that the events leading up to the SEC's issuance of Wells Notices were part of a "regulatory investigation," and were not a "proceeding." The dictionary definition of "proceeding" is "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment," or "[a]ny procedural means for seeking redress from a tribunal or agency." Black's Law Dictionary (10th ed. 2014). The dictionary definition of "investigation" is "[t]he activity of trying to find out the truth about something." Id. The July 8 Order explicitly stated that it was an investigation "to determine *whether* any persons or entities has engaged in, or are about to engage in, any of the reported acts or practices or any acts or practices of similar purport or object." Aplt. App., at 294 (emphasis added). This language makes clear that this was an SEC investigation, not a proceeding, and coverage under

14

the policy for a "regulatory investigation" was conditioned on the issuance of a Wells Notice or a target letter.[2] Thus, part (c) was not implicated, and a "claim" did not arise under the policy until the SEC issued Wells Notices, which triggered part (d) of the "claim" definition.

*The Policy Term "Alleged"*

MusclePharm also contends that the district court misconstrued the policy term "alleged," whereas Liberty argues that the court properly applied the plain and ordinary meaning of the term "alleged."

The policy defines "**Wrongful Act**" in part (a) as "any actual or alleged error, misstatement, misleading statement, act, omission, neglect, or breach of duty, actually or alleged[ly] committed or attempted by the **Insured Persons** in their capacities as such or in an **Outside Position**, or, with respect to **Insuring Agreement** 1.3, by the **Insured Organization**." Id. at 307 (emphasis in original). Again, the policy does not define "alleged," and therefore, this court "may utilize the plain and generally accepted meaning of the term." Bohrer v. Church Mutual Ins. Co., 965 P.2d 1258, 1262 (Colo. 1998). Turning to dictionary definitions, "alleged" means "[a]sserted to be true as described," or "[a]ccused but not yet tried," Black's Law Dictionary (10th ed. 2014),

---

[2] Patriarch Partners is further distinguishable on this point. In Patriarch Partners, the relevant policy's "claim" definition expressly included the "Investigation of an Insured alleging a Wrongful Act," where "Investigation" was defined to encompass "an order of investigation or other investigation by the" SEC. 2017 WL 4233078, at *1. In contrast, here an investigation was not covered under the policy until such time as the SEC issued a Wells Notice or a target letter—"at the point when the insured has been charged with wrongdoing." See id. at *6 (interpreting the policy in ProMedica).

15

and "accused but not proven or convicted," or "asserted to be true or to exist." Definition of ALLEGED, Merriam-Webster, https://www.merriam-webster.com/dictionary/alleged (last visited Oct. 12, 2017).

Relying on the provisional language of the July 8 Order and its disclaimers, we conclude that it did not contain an allegation of wrongdoing. The July 8 Order noted that it "should not be construed as an indication by the Commission or its staff that any violation of the law has occurred, nor as a reflection upon any person, entity, or security." Aplt. App., at 353. The SEC was not asserting that MusclePharm had broken any laws; rather, the SEC was investigating to determine whether it had.

MusclePharm cites to Morden v. XL Specialty Insurance, a case arising from the United States District Court for the District of Utah to argue that such a "narrow" reading of "alleged" "contradicts the District of Utah's interpretation." 177 F. Supp. 3d 1320, 1328 (D. Utah 2016); Aplt. Opening Br., at 32. We see no conflict. In analyzing the policy at issue in Morden, the court noted, "nothing . . . requires that [a] wrongful act . . . be definitively proven," instead, "wrongful acts include mere allegations of wrongdoing." 177 F. Supp. 3d at 1328. But the Morden court also stated "that notice to hold the insured responsible for a wrongful act must be more than an accusation [of] wrongdoing," "a naked threat of a future lawsuit," "or a request for information or an explanation." Id. (quoting Windham Solid Waste Mgmt. v. Nat'l Cas. Co., 146 F.3d 131, 134 (2d Cir. 1998)). Our conclusion, which mirrors that of the district court's—that the July 8 Order did not "allege" a "wrongful

16

act"—aligns with Morden's holding that "a request for information" is not a "wrongful act." See id.

MusclePharm also argues the district court "creates two definitions of 'allege'" by holding that there was no coverage under the policy for the July 8 Order because it did not "allege" a "wrongful act" and simultaneously determining that MusclePharm was entitled to coverage for the Wells Notices because they "allege" a "wrongful act." Aplt. Opening Br., at 34. These conclusions are not in conflict. MusclePharm attempts to analogize the Wells Notices to the July 8 Order. However, there is no need for us to compare the contents of the documents to respond to MusclePharm's argument.[3] The determinative fact is that the policy explicitly states Wells Notices are covered, whereas costs for the July 8 Order which do not "allege" a "wrongful act" are not.

*Post-Wells Notice Defense Costs*

MusclePharm further argues that the district court should have addressed Liberty's obligation and "refusal" "to pay all post-Wells Notice defense costs." Aplt. Opening Br., at 34 (emphasis omitted). Liberty, in response, asserts that whether it "was obligated to indemnify MusclePharm for post-Wells defense costs was not part of MusclePharm's claim for relief." Aplee. Br., at 50 (emphasis omitted).

We agree that this issue was not before the district court. MusclePharm filed the complaint on February 12, 2015, which was one day prior to the SEC's issuance

---

[3] But the documents are dissimilar: the Wells Notices indicate that the SEC "has made a preliminary determination to recommend that the Commission file an enforcement action," which is in stark contrast of the July 8 Orders' disclaimers.

17

of Wells Notices.  MusclePharm never amended its complaint to seek coverage for post-Wells Notice defense costs.  We read the scope of MusclePharm's claims as the district court read them when addressing this specific argument in its Order Denying Motion to Reconsider.  "[T]he complaint itself asserts a claim for breach of contract based on an allegation that 'the Policy requires Liberty to reimburse MusclePharm for the expenses MusclePharm has incurred *in connection with the SEC Proceeding*,'" which "[t]he complaint makes clear . . . was the SEC's investigation pre-dating issuance of the **Wells** Notices."  Aplt. App., at 289 (citing complaint and jury demand) (emphasis in original).

*Notice of Circumstance Provision, Judicial Notice, and the Expert's Affidavit*

*Standard of Review: Motion to Alter Judgment*

We review a grant or denial of a motion to alter or amend a judgment pursuant to Federal Rule of Civil Procedure 59(e) under an abuse of discretion standard. Hayes Family Trust v. State Farm Fire & Casualty Co., 845 F.3d 997, 1004 (10th Cir. 2017).  "The district court 'abuses its discretion if it made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances.'"  Id. at 1004–05 (quoting ClearOne Commc'ns v. Biamp Sys., 653 F.3d 1163, 1178 (10th Cir. 2011)).

"Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."  Servants of the Paraclete v. Does, 204 F.3d 1005, 1012 (10th Cir. 2000).  A motion to reconsider "is not appropriate to . . . advance

18

arguments that could have been raised in prior briefing." Id. It appears that is precisely what MusclePharm attempted to accomplish through its motion to reconsider.

*Notice of Circumstance Provision*

MusclePharm contends that the district court erred in not addressing the policy's notice of circumstance provision, which, it claims, "requires Liberty to reimburse" its "defense costs relating back to" its "notice of circumstance." As the district court noted, MusclePharm did not raise this argument in its motion for summary judgment, but instead raised it for the first time in its motion for reconsideration. The court generally need not address arguments raised for the first time in a motion for reconsideration as they are not properly before the court. See Burnette v. Dresser Indus., Inc., 849 F.2d 1277, 1285 (10th Cir. 1988). The district court did not abuse its discretion when it did not address this belated argument.

*Judicial Notice*

MusclePharm also argues that the court abused its discretion by not ruling on its request for judicial notice, which asked the court to take judicial notice of a Liberty policy found online that contained limiting language not included in the policy at issue. We conclude the district court did not abuse its discretion. "Judicial notice is an adjudicative device that alleviates the parties' evidentiary duties at trial, serving as 'a substitute for the conventional method of taking evidence to establish facts.'" York v. Am. Tel. & Tel. Co., 95 F.3d at 948, 958 (10th Cir. 1996). It "is appropriate where a matter is 'verifiable with certainty,'" such as "to establish

19

'adjudicative fact[s]' that are generally known or 'capable of accurate and ready determination' by resort to reliable sources." Id. (citation omitted).

MusclePharm initially sought judicial notice of the online policy in its reply brief in support of its motion for reconsideration. Courts are "reluctant to consider evidence raised only in a reply brief," W. Coast Life Ins. v. Hoar, 558 F.3d 1151, 1156 (10th Cir. 2009), and a party should not "introduce evidence after judgment" has been entered. See Am. Stores Co. v. Comm'r, 170 F.3d 1267, 1270 (10th Cir. 1999). For this reason alone, the district court properly exercised its discretion in refusing to consider the online policy.

Also, MusclePharm did not attempt to establish that this document was appropriate for judicial notice. Further, as the policy was undated and unauthenticated, it did not satisfy the basic requirements for judicial notice. Moreover, other circuits have cautioned courts from "finding judicially noticeable facts amongst . . . private corporate websites," which is where this online policy was found. See, e.g., Victaulic Co. v. Tieman, 499 F.3d 227, 236 (3d Cir. 2007). Finally, the online policy was not relevant to the court's analysis of the contracted-for policy governing MusclePharm and Liberty's relationship. See Leprino v. Nationwide Prop. & Cas. Ins. Co., 89 P.3d 487, 489 (Colo. App. 2013) ("We may not rewrite policy provisions that are clear and unambiguous, and we may neither add provisions to extend coverage beyond that contracted for nor delete them to limit coverage.").

20

*The Expert's Affidavit*

Next, MusclePharm asserts that the district court abused its discretion by not considering Kochenburger's Affidavit. Again, we disagree. Peter Kochenburger is an Associate Clinical Professor of Law, the Executive Director of the Insurance LLM Program, and the Deputy Director of the Insurance Law Center at the University of Connecticut School of Law. MusclePharm presented his Affidavit for the first time in its motion for reconsideration, and it did not even attempt to show that it "made a diligent yet unsuccessful effort to discover the evidence" earlier. See Devon Energy Production Co., L.P. v. Mosaic Potash Carlsbad, Inc., 693 F.3d 1195, 1213 (10th Cir. 2012) (citation omitted). MusclePharm did not state when it retained Kochenburger, explain why it did not disclose Kochenburger as an expert witness in discovery, or explain why it did not offer his affidavit during summary judgment briefing. The district court was correct in declining to consider MusclePharm's new arguments and new evidence presented in its motion to reconsider.

## III.

### *Motions to Seal*

Also before the court are two motions to seal. We order all of the documents at issue unsealed and third-party names redacted from subpoenas.

### *Legal Standard*

We may, in our discretion, "seal documents if the public's right of access is outweighed by competing interests." Helm v. Kansas, 656 F.3d 1277, 1292 (10th Cir. 2011) (citation omitted). "In exercising this discretion, we weigh the interests of

21

the public, which are presumptively paramount, against those advanced by the parties." Id. (citation omitted). "The party seeking to overcome the presumption of public access to the documents bears the burden of showing some significant interest that outweighs the presumption." Id. (citation omitted). MusclePharm failed to meet its burden, and Liberty has now conceded that its sealed volume should be unsealed. Therefore, we deny both motions.

*MusclePharm's Motion to Seal*

MusclePharm failed to meet its burden of demonstrating an interest that outweighs the presumption of public access to volumes 2–4 of its appendix. MusclePharm contends that it seeks to file the documents under seal because they were sealed at the district court. But, a "part[y] cannot overcome the presumption against sealing judicial records simply by pointing out that the records are subject to a protective order at the district court." Id. MusclePharm further asserts that SEC investigations are private, and the sealed volumes contain information generally unavailable to the public. And, MusclePharm claims that the volumes include SEC subpoenas issued to third-parties who are not involved in this litigation. However, MusclePharm does not argue that the confidentiality of these documents outweighs the presumption of public access. See Colony Ins. Co. v. Burke, 698 F.3d 1222, 1241–42 (10th Cir. 2012). This failure alone is sufficient for us to deny its motion.

Moreover, after an examination of the provisionally sealed documents, we determine they should not be sealed. First, Liberty's Executive Advantage Policy should not be sealed because its provisions can be found online, as can its boilerplate

22

language.  See Executive Advantage PLUS, LIBERTY INTERNATIONAL

UNDERWRITERS, https://www.liu-usa.com/Pages/ExecutiveAdvantagePLUS.aspx

(last visited Oct. 12, 2017).  And, the policy is extensively quoted and analyzed in the

parties' publicly-filed briefs.  Second, the July 8 Order should not be sealed because

SEC investigations become public when the SEC issues Wells Notices.  See, e.g.,

SEC Charges Sports Nutrition Company with Failing to Properly Disclose Perks for

Executives, U.S. SECURITIES AND EXCHANGE COMMISSION,

https://www.sec.gov/news/pressrelease/2015-179.html (last visited Oct. 12, 2017)

(linking to SEC Orders against MusclePharm, Pyatt, Meer, Davis, and Prosser).

Third, for this same reason, the SEC subpoenas should be unsealed.  But the names of

subpoenaed individuals and entities should be redacted because they are not relevant

to the parties' arguments or to the disposition of this case.  Fourth, communications

between the parties need not be sealed because they simply articulate the parties'

positions on coverage under the policy, which are publicly available through the

briefs filed in this court.  Finally, the communications contain attachments, including

the May 16 letter and a letter indicating that the SEC recommends enforcement

actions be filed against certain individuals.  For the same reason that the July 8 Order

and the subsequent subpoenas should be unsealed—because the investigation became

public with the Wells Notices—so should these attachments.

Lastly, we note, "where documents are used to determine litigants' substantive

legal rights, a strong presumption of access attaches."  Colony, 698 F.3d at 1242

(citation omitted).  In this case, the parties dispute whether the July 8 Order and the

23

related subpoenas constitute a claim under the policy and thereby entitle MusclePharm to coverage. These documents are clearly being "used to determine the litigants' substantive legal rights." See id. Thus, they should all be unsealed, but the names of third party individuals and entities should be redacted from the subpoenas.

*Liberty's Motion to Seal*

Liberty also submitted volume 2 of its supplemental appendix to the court under seal; however, Liberty acknowledged that, beyond complying with the district court's order, it did not have a substantial interest in sealing its volume. We agree. This court is not "bound by the district court's decision to seal certain documents below." Williams v. FedEx Corporate Servs., 849 F.3d 889, 905 (10th Cir. 2017) (citation omitted). The documents simply contain communications between Liberty and MusclePharm articulating their coverage positions. Thus, volume 2 of Liberty's appendix is also ordered unsealed.

## IV.

For the foregoing reasons, we AFFIRM the district court and DENY both motions to seal, but order redaction from the subpoenas of the names of third party individuals and entities to be completed by MusclePharm by October 27, 2017.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

24