# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

CONDUENT STATE HEALTHCARE, )
LLC, f/k/a/ XEROX STATE )
HEALTHCARE, LLC, f/k/a ACS STATE )
HEALTHCARE, LLC, )
                                 )
        Plaintiff, ) C.A. No. N18C-12-074 MMJ CCLD
                                 )
        v. )
                                 )
AIG SPECIALTY INSURANCE )
COMPANY, f/k/a CHARTIS )
SPECIALTY INSURANCE COMPANY, )
et. al., )
                                 )
        Defendants. )

Submitted: May 23, 2019
Decided: June 24, 2019

Upon Defendants' Partial Motion to Dismiss
**DENIED**

## OPINION

Robin L. Cohen, Esq., Keith McKenna, Esq. (Argued), McKool Smith, P.C., New York, New York; Jennifer C. Wasson, Esq., Carla M. Jones, Esq., Potter, Anderson, & Corroon, LLP, Wilmington, Delaware, *Attorneys for Plaintiff*

John L. Reed, Esq. (Argued), Matthew Denn, Esq., Harrison S. Carpenter, Esq., DLA Piper LLP, Wilmington, Delaware; Robert S. Harrell, Esq., Mayer Brown LLP, Houston, Texas, *Attorneys for Defendants*

**JOHNSTON, J.**

1

## FACTUAL AND PROCEDURAL CONTEXT

This is a coverage dispute between Plaintiff Conduent, an insured, and Defendants AIG Specialty Insurance ("AIG") and Lexington Insurance Company ("Lexington"), its insurers.

AIG issued a professional liability insurance policy ("Policy") to Conduent. Lexington is an excess insurer that issued a follow form policy. Conduent seeks insurance coverage for three alleged claims under the Policy. The allegations arise from services provided by Conduent to the Texas Health and Human Services Commission. Conduent processed requests from orthodontic providers for "prior authorization" of orthodontic services under Medicaid.

The three claims at issue are collectively referred to by Conduent as the Medicaid-Related Claims. Conduent labels these claims as the Medicaid Investigation, the Provider Actions, and the State Action. Each of the causes of action in this underlying lawsuit are based on all three of these Medicaid-Related Claims. Two of the causes of action – Breach of Contract and Declaratory Relief – are brought against AIG. Conduent alleges that AIG breached its obligations under the Policy by failing to defend and indemnify Conduent for the Medicaid-Related Claims. Conduent also seeks a declaration under the Policy, as well as the excess policies, to pay Conduent's costs in connection with the Medicaid-Related Claims.

Conduent has brought two additional causes of action against Lexington: Breach of Contract, and Anticipatory Breach of Contract. The Breach of Contract claim is substantially similar to the Breach of Contract claim brought against AIG. The Anticipatory Breach of Contract Claim alleges that Lexington anticipatorily repudiated the obligations under their policies by refusing to defend or indemnify Conduent for the Medicaid-Related Claims.

Defendants have moved to dismiss one of the Medicaid-Related Claims: the Medicaid Investigation.

According to the Complaint, there was a Dallas, Texas local news investigation in the summer of 2011. Conduent claims that this investigation prompted the Medicaid Investigation. The Policy became effective May 26, 2012. On June 8, 2012, the Texas Attorney General Issued a Civil Investigative Demand ("CID") to Conduent.[1] The CID stated that the Texas Attorney General was "investigating the possibility of Medicaid fraud involving the prior authorization process for orthodontia services." The CID stated further that the Texas Attorney General "has reason to believe you may have information relevant to its investigation." Conduent reported the 2012 CID to AIG.

---

[1] Conduent was known previously as Affiliated Computer Services (ACS State Healthcare) (A Xerox Company).

Conduent alleges that the Defendants' duty to defend and/or indemnify was triggered when the CID was issued. Defendants argue that the CID does not constitute a Claim as defined in the Policy. The relevant Policy provision provides: "The Insurer shall pay on an Insured's behalf all Loss in excess of the applicable Retention that such Insured is legally obligated to pay resulting from a Claim alleging a Wrongful Act." Therefore, the central issue in this motion is whether the CID constitutes a "Claim alleging a Wrongful Act" under the Policy.

## STANDARD OF REVIEW

In a Rule 12(b)(6) Motion to Dismiss, the Court must determine whether the claimant "may recover under any reasonably conceivable set of circumstances susceptible of proof."[2] The Court must accept as true all well-pleaded allegations.[3] Every reasonable factual inference will be drawn in the non-moving party's favor.[4] If the claimant may recover under that standard of review, the Court must deny the Motion to Dismiss.[5]

---

[2] *Spence v. Funk*, 396 A.2d 967, 968 (Del.1978).
[3] *Id.*
[4] *Wilmington Sav. Fund. Soc'y, F.S.B. v. Anderson*, 2009 WL 597268, at *2 (Del. Super.) (citing *Doe v. Cahill*, 884 A.2d 451, 458 (Del.2005)).
[5] *Spence*, 396 A.2d at 968.

4

## ANALYSIS

The Policy states: "The Insurer shall pay on an Insured's behalf all Loss in excess of the applicable Retention that such Insured is legally obligated to pay resulting from a Claim alleging a Wrongful Act." The Policy defines Claim as: "(1) a written demand for money, services, non-monetary relief or injunctive relief; or (2) a Suit)." There is a split of authority as to what constitutes a claim under such policy language.

### *Authority – CID NOT a Claim*

In *MusclePharm Corporation v. Liberty Insurance Underwriters, Inc.,*[6] the plaintiffs, MusclePharm, received a letter from the Securities and Exchange Commission ("SEC") stating that the SEC was "conducting an inquiry into MusclePharm" and "requesting that MusclePharm voluntarily produce documents."[7] The SEC later issued to MusclePharm an "Order Directing Private Investigation and Designating Officers to Take Testimony."[8] That Order contained a disclaimer, stating that "it should be understood that the Commission has not

---

[6] 712 Fed.Appx. 745 (10th Cir. 2017).
[7] *Id.* at 750.
[8] *Id.*

5

determined whether any of the persons or companies mentioned in the order have committed any of the acts described or have in any way violated the law."[9]

The SEC later subpoenaed MusclePharm and its officers, requiring both the company and its individual officers to produce documents and to appear for testimony.[10] The parties eventually settled, and MusclePharm sought defense costs under its insurance policy. MusclePharm appealed the trial court's decision denying coverage, claiming that the trial court "misconstrued the policy terms 'claim' and 'allege' and therefore erred in concluding that its expenses incurred in responding to the…Order and the related subpoenas are not covered under the policy."[11] MusclePharm argued that the Order and related subpoenas were non-monetary demands for relief.[12] The court upheld the trial court's ruling, explaining that "the insured does not have a covered 'claim' without an allegation of wrongdoing against an insured person, and the SEC stated in the…Order and the related subpoenas that these documents were not alleging wrongdoing."[13]

The *MusclePharm* court relied on *Employers' Fire Ins. Co v. ProMedica Health Systems, Inc.*[14] in reaching its decision.[15] In *Employers' Fire*, the FTC sent

---

[9] *Id.* at 750-51.
[10] *Id.* at 751.
[11] *Id.* at 752.
[12] *Id.* at 753.
[13] *Id.* at 754.
[14] 2013 WL 1798978 (6th Cir.).
[15] *MusclePharm*, 712 Fed.Appx. at 754.

a letter to ProMedica, stating that it would be "conducting a non-public preliminary investigation" to determine whether ProMedica violated Section 7 of the Clayton Act, or Section 5 of the Federal Trade Commission Act.[16] The FTC sent a letter to ProMedica on August 6, 2010, stating that it was transitioning its investigation to full-phase and expected to authorize compulsory process shortly.[17] The FTC later subpoenaed employees of ProMedica.[18]

The court held that "none of the actions taken by the FTC in August 2010, viewed individually or taken together, satisfy all of the requirements for a 'claim.'"[19] The court explained that the FTC "did not 'assert to be true' or 'declare' that antitrust violations had occurred or would occur….Rather, the communications…only indicated that the FTC sought to determine 'whether' such violations had occurred or would occur."[20] The court stated that the "FTC has broad investigatory powers and that 'investigations' do not necessarily amount to 'allegations.'"[21] The court held that a claim did not arise until the FTC initiated administrative and civil actions against ProMedica.[22]

---

[16] *Employers' Fire Ins. Co.*, 2013 WL 1798978, at *2.
[17] *Id.* at *3.
[18] *Id.*
[19] *Id.* at *4.
[20] *Id.* at *5.
[21] *Id.* at *6.
[22] *Id.* at *1.

In *W.R. Starkey Mortgage, LLP v. Chartis Specialty Insurance Co.*,[23] the Department of Justice ("DOJ") sent the plaintiffs a written request for information relating to an investigation that it was conducting.[24] Starkey complied with the DOJ's requests and sought coverage for the costs it incurred in complying with the request.[25] The court held that the DOJ's request for information did not constitute a claim.[26] The court explained that "no court has found that a request for information that was not accompanied by a subpoena was sufficient to constitute a 'demand' or a 'claim.'"[27]

In *Oceans Healthcare, L.L.C. v. Illinois Union Insurance Company*,[28] a healthcare provider brought an action against an insurer for costs incurred when the provider received a subpoena from the Department of Health and Human Services.[29] The subpoena demanded documents relating to an investigation into possible False Claims Act violations committed by the provider.[30] The court cited *Starkey Mortgage*,[31] in which the court held that a "request accompanied by a threat of a subpoena is not sufficient to establish a 'demand for something due,'

---

[23] 2013 WL 12138896 (E.D. Tex.).
[24] *Id.* at *1.
[25] *Id.*
[26] *Id.* at *6.
[27] *Id.*
[28] 2019 WL 1437955 (E.D. Tex.).
[29] *Id.* at *1.
[30] *Id.*
[31] 2013 WL 12138896 (E.D. Tex.).

since without the subpoena, nothing is actually due."[32] The *Oceans Healthcare* court stated that unlike in *Starkey Mortgage*, the subpoena in *Oceans Healthcare* was required by law, and was "undoubtedly a demand for something due...."[33] The court stated that a "subpoena is determinative as to whether a request is a demand for something due."[34] The Court ruled that the subpoena was a claim for a wrongful act, as defined by the policy.[35]

In *First Horizon National Corporation v. Houston casualty Company*,[36] the court found that CIDs issued by the DOJ did not "constitute a Claim under the Policy because the documents [did] not contain allegations of a 'Wrongful Act.'"[37] The court relied on *ProMedica* in determining that "the mere possibility that an investigation may lead to a formal allegation of a Wrongful Act is not sufficient to constitute a Claim."[38] Further, the CIDs did not include specific allegations against the insured.[39]

---

[32] *Id.* at *6.
[33] 2019 WL 1437955, at *5 (E.D. Tex.).
[34] *Id.*
[35] *Id.* at *7.
[36] 2017 WL 2954716 (W.D. Tenn.).
[37] *Id.* at *10.
[38] *Id.*
[39] *Id.*

### *Authority – CID IS a Claim*

In *Syracuse University v. National Union Fire Ins. Co. of Pittsburgh, PA,*[40] the plaintiff sought relief for breach of contract, and for a declaratory judgment to define the parties' rights and obligations under the subject insurance policy. The plaintiff alleged that it was an insured under a "not-for-profit individual and organization insurance policy sold to it by the defendant."[41] In November 2011, the plaintiff became aware of media coverage regarding allegations of sexual abuse within the plaintiff's basketball organization.[42] The plaintiff informed the insurer that a claim might arise.[43]

The plaintiff received six subpoenas related to state and federal investigations surrounding the sexual abuse allegations: three grand jury subpoenas from the United States Attorney's Office and three grand jury subpoenas from the Onondaga County District Attorney's Office.[44] The federal subpoenas sought relevant information relating to the alleged abuser's conduct, and any documents relating to any complaints made about the alleged abuser.[45] The subpoenas also sought information relating to the plaintiff's response in handling any complaints

---

[40] 2013 WL 3357812 (N.Y. Sup. Ct.).
[41] *Id.* at *1.
[42] *Id.*
[43] *Id.*
[44] *Id.*
[45] *Id.*

about the alleged abuser.[46] The District Attorney's Office subpoenas sought records relating to Syracuse basketball games, meet and greet sessions, and video footage of the games.[47] In December, 2011, a civil complaint was filed against the plaintiff seeking damages for alleged acts or omissions in relation to the abuse allegations.[48]

The plaintiff sought coverage for the subpoenas received in connection with the investigation.[49] The court held that the subpoenas constituted a claim. The court found that the term Claim was defined unambiguously in the policy as: "(1) a written demand for monetary, non-monetary or injunctive relief...." The court held that "[t]he grand jury's investigations and the subpoenas constitute 'a written demand...for non-monetary relief' and the investigations are 'criminal proceedings for monetary or non-monetary relief....'"

The *Syracuse* court relied on *MBIA Inc. v. Federal Ins. Co.*[50] in reaching its decision. In *MBIA*, the court found that governmental investigative subpoenas constituted a claim. The subject insurance policy defined the term "claim" as a "formal or informal administrative or regulatory proceeding or inquiry commenced

---

[46] *Id.*
[47] *Id.*
[48] *Id.*
[49] *Id.*
[50] 652 F.3d 152 (2nd Cir. 2011).

by the filing of a notice of charges, a formal or informal investigative order or similar document."[51]  The court stated:

> We reject the insurers' crabbed view of the nature of a subpoena as a "mere discovery device" that is not even "similar" to an investigative order. The New York case law makes it crystalline that a subpoena is the primary investigative implement in the NYAG's tool shed. We also reject the insurers' argument that because the definition does not include a proceeding commenced by service of a subpoena, a subpoena is not included. This reading puts form over substance; the fact that the definition does not say "service of a subpoena" is not dispositive.[52]

Other courts have reached similar conclusions even when a subpoena was not issued.  In *Weaver v. Axis Surplus Ins. Co.,*[53] the court held that a Maryland Attorney General's letter was a claim because it was a written demand for non-monetary relief.[54]  The court reasoned that the letter "meets the definition of a 'demand' because it is a request for relief under a claim of right and puts [the party] on notice that legal obligations have been triggered."[55]

In *Minuteman International, Inc. v. Great American Insurance Co.,*[56] the court held that an SEC order and subsequent subpoenas were "demands for relief in that they were demands for something due."[57]  The court stated further that a

---

[51] *Id.* at 159.
[52] *Id.* at 160.
[53] 2014 WL 5500667 (E.D.N.Y.).
[54] *Id.* at *7.
[55] *Id.* at *8.
[56] 2004 WL 603482 (N.D. Ill.).
[57] *Id.* at *7.

"demand for 'relief' is a broad enough term to include a demand for something due, including a demand to produce documents or appear to testify."[58]

*   *   *

The case law is split on this issue. The Court finds the authority that supports the CID constituting a "Claim" more persuasive. The Texas CID to Conduent is a "Claim" as defined in the insurance policy because it is a "demand for…non-monetary relief" specifically targeted at the insured. Additionally, the opinions finding that such requests are not claims do not distinguish information requested by adjudicative bodies or law enforcement, as opposed to information requests issued by other entities. The "no claim" opinions do not address the ability of the issuer to compel compliance without judicial intervention.

### Claim "Alleging a Wrongful Act"

The June 2012 CID stated: "The Office of the Attorney General of Texas is investigating the possibility of Medicaid fraud involving the prior authorization process for orthodontic services. Such activities may violate the Texas Medicaid Fraud Prevention Act, Tex. Hum. Res. Code §§ 36.002, *et. seq.*, and other Texas law."[59]

---

[58] *Id.*
[59] Am. Compl. ¶ 39.

Medicaid fraud clearly would be a Wrongful Act.[60] It is also clear that the focus of the CID is Conduent's predecessor entity. The predecessor entity is not an unrelated third party who might have had relevant information, but was not intended as the focus of the investigation. If that had been the situation, the CID would have been seeking information not necessarily targeted at the insured. The central question is: when are requests for information or investigations sufficient to trigger coverage under the policy terms?

There is a broad duty to pay defense costs. Terms in an insurance contract generally are given their plain and ordinary meaning. Any ambiguity in the contract is construed against the insurer and in favor of coverage.[61] The duty to defend arises whenever a complaint against the insured, read as a whole and with all reasonable inferences made in light most favorable to the policyholder, alleges facts that potentially fall within the scope of coverage.[62]

---

[60] The policy defines a Wrongful Act, in relevant part as "any negligent act, error or omission, misstatement or misleading statement in an Insured's performance of Professional Services for others occurring on or after the Retroactive Date and prior to the end of the Policy Period...." (Policy at Endorsement No. 13).

[61] *See ConAgra Foods, Inc. v. Lexington Ins. Co.*, 21 A.3d 62, 73 (Del. 2011); *Ayers v. Assoc. of County Com'rs of Georgia-Interlocal Risk Management Agency*, 771 S.E.2d 743, 748 (Ga. Ct. App. 2015); *Auto-Owners Ins. Co. v. Neisler*, 779 S.E.2d 55, 59 (Ga. App. Ct. 2015); *Blue Cross & Blue Shield of Ga., Inc. v. Shirley*, 699 S.E.2d 616, 619 (Ga. App. Ct. 2010); *Gabriel v. Mount Vernon Fire Insurance Company*, 199 A.3d 79, 83 (Conn. App. Ct. 2018); *Cohen & Slamowitz, LLP v. Zurich Am. Ins. Co.*, 92 N.Y.S.3d 365, 367 (N.Y. App. Div. 2019); *Selective Ins. Co. of America v. County of Rensselaer*, 47 N.E.3d 458, 461 (N.Y. 2016).

[62] *See Verizon Commc'ns Inc. v. Ill. Nat'l Ins. Co.*, 2017 WL 1149118, at *7 (Del. Super.)("the test is whether the allegations of the complaint, when read as a whole, assert 'a risk within the coverage of the policy'"); *DaCruz v. State Farm Fire & Cas. Co.*, 846 A.2d 849, 858 (Conn. 2004)(duty to defend under Connecticut law is "measured by the allegations of the complaint"

14

For the purposes of interpreting Plaintiff's Policy, the Court is not persuaded that investigating an alleged unlawful act by the insured, is different from actually alleging an unlawful act. This is a distinction without a difference.

The Policy language controls. The Court finds that the CID was a request for information in connection with an investigation. The investigation was initiated by law enforcement, and clearly was focused on the insured. The stated purpose of the CID was to investigate the possibility of wrongful acts that may violate the law. The CID is a Claim for non-monetary relief, alleging a Wrongful Act under the Policy terms. This finding is consistent with the view that the duty to pay defense costs should be construed broadly, and in favor of coverage whenever factual allegations raise the possibility of liability covered by the policy.

---

and is "triggered whenever a complaint alleges facts that potentially could fall within the scope of coverage"); *Langdale Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, 110 F. Supp. 3d 1285, 1301 (N.D. Ga. 2014), *aff'd*, 609 Fed. App'x 578 (11th Cir. 2015)(duty to defend under Georgia law is triggered "[i]f the facts as alleged in the complaint even arguably bring the occurrence, within the policy's coverage, the insurer has a duty to defend the action").

15

## CONCLUSION

The Court finds that there is a split of authority on the issue of whether or not a Civil Investigative Demand constitutes a Claim for the purposes of triggering an insurer's duties to defend and indemnify. The Court finds that the authority, supporting the position that the CID constitutes a claim, is more persuasive.

The CID is a request for information related to an investigation targeted at the insured. The purpose of issuing the CID was to investigate unlawful acts that may have been committed by the insured. The CID is a Claim for non-monetary relief that alleged a Wrongful Act under the Policy terms.

**THEREFORE, Defendants' Partial Motion to Dismiss is hereby DENIED.**

**IT IS SO ORDERED.**

The Honorable Mary M. Johnston

16